Fletcher v. Bonnet.

LEONARD H. FLETCHER et al., appellants,

v.

CHARLES E. BONNET, JR., et al., respondents.

1. If a chattel mortgage be made and delivered to a trustee for creditors, he, as holder, is competent to make the affidavit required by statute to give the mortgage full effect.

2. If the affidavit annexed to a chattel mortgage expressly refers to matters stated in the mortgage, those matters must be regarded as part of the affidavit.

3. If a chattel mortgage, reciting the debts which it was given to secure, be recorded in pursuance of the provisions of the statute, its recitals become evidence of the existence of the debts against subsequent creditors of the mortgagor, notwithstanding the mortgagor has retained possession of the chattels.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *Bonnet* v. *Hope Manufacturing Co.*, *6 Dick. Ch. Rep. 162.*

In this case the bill of complaint was filed on behalf of the operatives of the Hope Manufacturing Company, an insolvent corporation, to secure their wages for labor performed during thirty days prior to January 30th, 1892. The appellants, Leonard H. Fletcher, George G. Green and Hulbert L. Warner, were made defendants because of their interest in a mortgage of real and personal property, made under seal by the corporation, and recorded April 15th, 1891, of which the material parts are as follows:

"This indenture made the fourteenth day of April, in the year one thousand eight hundred and ninety-one, between Hope Manufacturing Company, a corporation organized and existing under the laws of the State of New Jersey, party of the first part, and Leonard R. Fletcher, of the city of Philadelphia, in the commonwealth of Pennsylvania, party of the second part,

"Witnesseth: Whereas, the party of the first part, on the day of the date hereof, is indebted unto George G. Green in the sum of six thousand dollars, Hulbert H. Warner in the sum of thirty-two thousand seven hundred and thirty-nine dollars and eighty-nine cents, James F. Hope in the sum of twenty-five thousand dollars, Jeremiah G. Donoghue in the sum of eight thousand

dollars, M. E. Bonnet in the sum of four thousand four hundred and twenty-one dollars and seventy-nine cents, Bernard Carr in the sum of four thousand dollars, Leonard R. Fletcher in the sum of two thousand dollars, John F. Hope in the sum of seventy thousand eight hundred and ten dollars and eight cents, and is desirous of securing the payment of said indebtedness.

"And whereas, at a meeting of the board of directors of said party of the first part held on the thirteenth day of April, eighteen hundred and ninety-one, the president and secretary were duly authorized to execute and deliver to Leonard R. Fletcher, said party of the second part, *in trust,* a mortgage to secure notes for the payment of said indebtedness.

"And whereas, the said party of the first part has made its notes for the payment of said indebtedness all bearing even date herewith and drawing interest from the date hereof, as follows: One to George G. Green for fifteen hundred dollars at one year; another to said George G. Green for fifteen hundred dollars at two years; a third to said George G. Green for fifteen hundred dollars at three years, and a fourth to said George G. Green for fifteen hundred dollars at four years; four to said Hulbert H. Warner, each for eight thousand one hundred and eighty-four dollars and ninety-one cents; one at one year, another at two years, a third at three years and a fourth at four years; four to James F. Hope, each for the sum of six thousand two hundred and fifty dollars, one at one year, another at two years, a third at three years and a fourth at four years; four to said Jeremiah G. Donoghue, each for two thousand dollars, one at one year, another at two years, a third at three years and a fourth at four years; four to said M. E. Bonnet, each for the sum of eleven hundred and five dollars and forty-four cents, one at one year, one at two years, a third at three years and a fourth at four years; four to Bernard Carr, each for the sum of one thousand dollars, one at one year, another at two years, a third at three years and a fourth at four years; four to Leonard R. Fletcher, the party of the second part, each for five hundred dollars, one at one year, another at two years, a third at three years and a fourth at four years; four to John F. Hope in the sum of seventeen thousand seven hundred and two dollars and fifty-two cents each, one at one year, another at two years, a third at three years and a fourth at four years;

"Now this indenture witnesseth: That the party of the first part as well for and in consideration of the premises and for better securing to the said George G. Green, Hulbert H. Warner, James F. Hope, Jeremiah G. Donoghue, M. E. Bonnet, Bernard Carr, Leonard R. Fletcher and John F. Hope, their and each of their heirs, executors, administrators, assigns, the payment of said notes and the interest thereon, as in consideration of the sum of one dollar unto the party of the first part by the said party of the second part at and before the ensealing and delivery hereof well and truly paid, the receipt whereof is hereby acknowledged, has granted, bargained, sold, conveyed, assigned, transferred and set over and by these presents doth grant" &c.

"State of New Jersey, Camden County, ss.—

"Be it remembered, that on this fourteenth day of April, in the year of our Lord one thousand eight hundred and ninety-one, before me, the subscriber, a

Fletcher *v.* Bonnet.

master in chancery of New Jersey, personally appeared William C. Blelock, of full age, to me personally known, who being by me duly sworn according to law, on his oath saith that he is the secretary of Hope Manufacturing Company; that John F. Hope is the president of the same, and that the seal affixed to the foregoing instrument is the corporate seal of said company, and that the said John F. Hope, as such president, signed said instrument and affixed said seal thereto and delivered the same as the voluntary act and deed of the said corporation, and by authority of the board of directors of the said company, for the uses and purposes therein expressed, and that he, the said William C. Blelock, did, at the execution thereof, attest the same and subscribe the same as witness thereto.

"RICHARD T. MILLER, *M. C. C.*"

The only questions raised upon this appeal relate to the validity of this mortgage as a lien upon chattels, and the proof of debts secured thereby.

The pertinent provisions of the statute are sections 4 and 9 of the Chattel Mortgage act (*Rev. Sup. p. 491*), viz.:

"SEC. 4. That every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, having annexed thereto an affidavit or affirmation made and subscribed by the holder or holders of said mortgage, his, her or their agent or attorney, stating the consideration of said mortgage and as nearly as possible the amount due and to grow due thereon, be recorded" &c.

"SEC. 9. That every chattel mortgage hereafter recorded pursuant to the provisions of this act, shall be valid against the creditors of the mortgagor, and against subsequent purchasers and mortgagees, from the time of the recording thereof until the same be canceled of record" &c.

*Mr. Thomas E. French* and *Mr. Martin P. Grey*, for the appellants.

*Mr. John J. Crandall*, for the respondents.

The opinion of the court was delivered by

DIXON, J.

The first ground for attacking this mortgage is that the affidavit annexed to it was not made by the proper person, and the vice-chancellor so decided.

This decision was erroneous.

The affiant was the legal mortgagee, to whom the mortgage was delivered, and who held it and had the lawful right to hold it. Consequently he was "the holder," and as such was, by the plain language of the statute, authorized to make the requisite affidavit. That he may not have had personal knowledge of the truth of the matters stated in his affidavit is not reason enough for distorting this explicit provision. The law requires that the statement shall be true, not that the affiant shall know it to be true. Had the statute not indicated the person who was to make the affidavit, then it might well have been assumed that it was to be made by one cognizant of the facts; but here the person or class of persons is designated, without reference to their knowledge. It may often happen that no person within the class is directly cognizant of "the consideration of the mortgage and the amount due and to grow due thereon," as in the case of an assignee of a pre-existing debt, or an executor or administrator taking security for a debt due the decedent, yet certainly such a person may become "the holder" of a chattel mortgage, and must be competent to make the statutory affidavit. His conscience is charged to the extent of his information; the validity of the instrument depends on the correctness of that information.

The second objection to the mortgage is that the affidavit does not state "as nearly as possible the amount due and to grow due" on the mortgage.

The affidavit expressly refers to matters stated in the mortgage, and therefore these matters must be regarded as part of the affidavit. *Gardiner* v. *Parmalee, 31 Ohio St. 551; Gilbert* v. *Vail, 60 Vt. 261; Tompkins* v. *Crosby, 19 Atl. Rep. 720.* So read, the affidavit distinctly indicates the times when designated sums will grow due, and that nothing was due at the date of the mortgage.

It is further objected to the claims of the appellants that no proof was made in the cause that the mortgage really represented actual indebtedness.

The bill of complaint alleged that there was no such indebtedness, and called on the defendants, the trustee and *cestuis que*

*trust* in the mortgage, to answer without oath; the appellants answered that the notes, mentioned in the mortgage as theirs, did represent so much money actually loaned by them respectively to the corporation.   No testimony on the point was offered by either side, except that the defendants put the mortgage in evidence and it was received without objection.

Assuming that the burden of proof with regard to the non-existence of the debts did not rest upon the complainants, still we think the debts were proved.

The recitals in the mortgage were evidence against the corporation and its subsequent creditors.   *Webb* v. *Mann, 3 Mich. 139; State Bank* v. *Chetwood, 3 Halst. 1; Brown* v. *Kahnweiler, 1 Stew. Eq. 311; Rev. p. 387 pl. 52.*   But the force of such evidence against creditors would, at common law, have been overcome by the fact that possession of the chattels remained with the mortgagor, that circumstance being, at common law and in favor of creditors, *prima facie* evidence of fraud (*Miller* ads. *Pancoast, 5 Dutch. 250*), which could not be rebutted without further proof than the mortgage itself afforded of a valuable consideration.   But now, under the statute above quoted, chattel mortgages, when recorded pursuant to the provisions of the act, become valid against the creditors of the mortgagor, notwithstanding his retention of possession.   In the validity thus established is included the evidential efficacy of all recitals in the instrument with regard to facts that go to constitute the mortgage, among them the indebtedness to be secured.   The mortgage now in question having been duly executed, attested and recorded, sufficiently proved the debts due to the appellants.

The decree below, postponing the lien for these debts to the claims of the complainants, should be reversed.

*For reversal*—ABBETT, DEPUE, DIXON, GARRISON, LIPPINCOTT, REED, VAN SYCKEL, BOGERT, KRUEGER, PHELPS, SMITH—11.

*For affirmance*—None.