The defendant, Guelick, on November 23d 1925, executed to the defendant Standard Tallow Company a chattel mortgage for $400 on certain fixtures located in his butcher shop at 52 Park avenue, Rutherford, New Jersey. The body of the mortgage contains the following clause: *Page 181 
"Upon condition, nevertheless, that if I, the said party of the first part, shall and do well and truly pay unto the said party of the second part, its successors and assigns, the sum of four hundred dollars [$400] payable on demand or in the following manner. That is to say by delivering to the party of the second part all the fats, suets, skins, bones and offal produced by my meat market at No. 52 Park avenue, Rutherford, N.J., and by paying in cash upon the fifteenth day of each month the difference between the value of said fats, suets, skins, bones and other offal and $35 the first ten months and $25 the last two months.
"It is understood and agreed that at the expiration of one year from date the amount due shall be paid in full. It is understood that in the event that for any reason whatsoever I am unable to fail or refuse to or do not deliver to the mortgagee herein, its successors or assigns, during any one week, all the fats, suet, skins, bones and offal produced by my meat market, then at the option of the said Standard Tallow Co., its successors or assigns, the balance due on this mortgage shall become due and payable at once. In the event that I meet all the above conditions, then these presents shall be void."
The affidavit attached to the mortgage is in the following form:
"STATE OF NEW JERSEY COUNTY OF ESSEX — 88.
I, Jerome Levy, Vice-President of the Standard Tallow Company, the mortgagee in the foregoing mortgage named, being duly sworn on his oath, says that the true consideration of the said mortgage is as as follows, viz., the sum of four hundred dollars [$400] in cash this day loaned and advanced to George Guelich, the mortgagor herein to be repaid in the following manner, that is to say by delivering and selling the Standard Tallow Company all fats, suets, skins, bones and other offal produced by me in my meat market at No. 52 Park Ave., Rutherford, N.J., and by paying in cash upon the fifteenth day of each month the difference between the value of the said fats, suet, skins, bones and other offal and $35 the first ten months and $25 the last two months. Deponent further says that there is due and to become due on said mortgage the sum of four hundred dollars [$400] ..... dollars and ..... cents, besides lawful interest thereon from the ..... day of .....
 JEROME LEVY, Vice-President.
Sworn and subscribed before me this twenty-third day of November, A.D. 1925.
 DAVID FRIEDMAN [SEAL] A Notary Public of N.J."
On the day the mortgage was executed and delivered the mortgagee delivered to the mortgagor its check for $400, *Page 182 
which check, however, was not presented for payment nor paid by the bank on which it was drawn until November 27th, 1925. The chattel mortgage, the affidavit and check were all dated November 23d 1925.
Guelick became indebted to the complainant in February, 1926, and on March 1st, 1926, complainant sued out a writ of attachment against Guelick in which proceedings judgment was entered on April 13th, 1926, for $273.71 damages and costs. The mortgaged chattels were sold by consent pendente lite for $270, which was paid into court subject to the rights of the parties. The mortgage is attacked on the ground that the affidavit annexd thereto is not a sufficient compliance with the provisions of section 4 of the Chattel Mortgage act (1 Comp. Stat p. 463), because first, it is untrue in fact, and second, that the consideration of the mortgage is not sufficiently or correctly stated. A third point of attack is that it is not clear that the mortgage was intended as a lien upon the property of the mortgagor.
It is claimed that the affidavit is false in that (a) it alleges that $400 in cash was loaned; (b) that the loan was made on November 23d 1925; (c) that the loan was to be repaid byhim (the affiant) by delivering and selling to the mortgagor all the fats, c., in his meat market; (d) that there was due on the mortgage on November 23d 1925, the sum of $400, with interest.
 I.
Objection (a) is based on the fact that a check instead of cash was delivered to the mortgagor. This objection is unsound. If actual cash was not advanced it was the equivalent of cash and by delivery of the check the mortgagee put it in the power of the mortgagor to immediately convert the check into cash. The check was payable on presentation at the Broad and Market National Bank in Newark, New Jersey. In modern business transactions checks pass as cash, and while not legal tender or actual cash, commerce and trade would be very much restricted if checks were not accepted in lieu of cash. Where so accepted they should be so considered by the courts. *Page 183 
Objection (b) is based upon the contention that the actual loan was not made until November 27th, 1927, the date on which the check was paid by the bank. This is also unsound. The loan was made when the check was delivered. Stanber v. Simms MagnetoCo., 98 N.J. Eq. 38. In that case the mortgage was executed on January 12th, 1924, the check for the amount of the loan was delivered on January 14th, 1924, and the mortgage recorded January 16th, 1924. Vice-Chancellor Backes there said: "The loan was made two days after the affidavit was sworn to but before the recording of the mortgage." The loan was therefore made at the time of the delivery of the check, and so here.
Objection (c) cannot prevail because the affidavit must be read in connection with the mortgage itself. Metropolitan FixtureCo. v. Albrecht, 70 N.J. Law 149; Fletcher v. Bonnett,51 N.J. Eq. 615; Lessler v. Bank, 97 N.J. Eq. 396; affirmed,4 N.J. Adv. R. 289. It is apparent that the affidavit attached to the mortgage is "inartificially drawn," but read together with the mortgage itself, as it must be, there is neither ambiguity nor falsity; nor is an attempt to deceive perceptible.
Objection (d). It has been repeatedly held that the word "due" does not necessarily mean "owing and payable," and that "it is often used to signify merely the present existence of a debt to be paid hereafter." Metropolitan Fixture Co. v. Albrecht andLessler v. Bank, supra. The debt came into existence the moment the check was delivered. It is plain, therefore, that this objection cannot prevail.
 II.
As to the claim that the affidavit does not correctly or sufficiently state the consideration, this is based upon the contention that the consideration of the mortgage was not merely the loan of $400, but that it included also an agreement to sell fats, suets, c. That is not so. The consideration of the mortgage was the $400 loan. The agreement to sell offal was merely an inducement to the loan and not made as security therefor. A violation of the agreement would merely *Page 184 
advance the time of repayment. No other penalty was added. But even if complainant's contention that the agreement was a part of the consideration is correct, the statute is satisfied because the affidavit and the mortgage must be read together, and so read there can be no misunderstanding. It is obvious from a mere inspection of the mortgage and affidavit that the clause in the affidavit relating to the agreement was copied verbatim from the mortgage, and the failure to substitute the word "him" and "his" for "me" and "my" is not fatal. Bollschweiler v. PackerHouse Hotel Co., 83 N.J. Eq. 459, is cited in support of this objection, but with respect to this point that case merely held that if such an agreement constituted a part of the consideration of the mortgage, it should be incorporated in the affidavit. It is so incorporated here, and, therefore, the rule of that case is satisfied.
 III.
It is also argued as a further reason why the mortgage is defective that it is not clear that it was intended as a loan upon the property of the mortgagor. This was based upon the use of the words "me" and "my" in the affidavit instead of the words "him" and "his." The terms of the mortgage itself and the schedule attached thereto, both of which are signed by the mortgagor, are a sufficient refutation of this argument; no one could mistake the fact that it was the mortgagor's chattels which were pledged as security.
There was no fraud alleged or proved in this case, and I take it that the principles on which cases of this kind are to be decided are those stated or approved by our court of errors and appeals in Strong v. Gaskill, 59 Atl. Rep. 339 (at p. 341);affirmed, 53 N.J. Law 665, and American Soda Fountain Co. v.Stolzenbach, 75 N.J. Law 721 (at p. 723). In the former case the court said:
"But if the affidavit state the consideration by giving truthfully the substance of the transaction, a judgment entered for an honest demand for an actual indebtedness, and without fraudulent purpose, will not be open to the attack of other creditors merely because the affidavit is inartificially *Page 185 
drawn. The word `true,' in this connection, means that which is frank and actual, rather than that which is precise and technical."
In the latter case the court of errors and appeals said:
"In the absence of fraud, instruments so common in the course of commercial transactions by the laity should be sustained whenever there is an honest and substantial compliance with the statute. Criticisms directed to matters of artifice, rather than to those of substance, ought not to prevail."
See, also, Finkel v. Famous Lunch Room Co., 4 N.J. Adv. R.1941, where Vice-Chancellor Backes said: "The law does not require a technical nicety."
This matter was submitted to the court upon an agreed state of facts and brief on behalf of complainants on April 8th, 1927. I have waited ten weeks for defendant's brief and have received none, although I have written to his solicitor twice during this period, requesting it. The failure of attorneys to promptly present briefs in causes submitted to this court accounts in large measure for much of the delay in deciding cases which is the subject of complaint among members of the bar.
In my judgment the mortgage here in controversy is valid, and I will advise a decree accordingly.