FRANK SICKINGER, TRUSTEE IN BANKRUPTCY OF NA-
THAN TIGER, PLAINTIFF-RESPONDENT, v. HEYMAN
ZIMEL AND HARRY GOLDSTEIN, DEFENDANTS-APPEL-
LANTS.

Argued December 11, 1950—Decided January 8, 1951.

Mr. *Hymen D. Goldberg* argued the cause for appellants. (*Messrs. Morrison, Lloyd & Griggs,* attorneys).

Mr. *Samuel S. Black* argued the cause for respondent.

The opinion of the court was delivered by

WACHENFELD, J. The plaintiff, trustee in bankruptcy of Nathan Tiger, sued to set aside a chattel mortgage given by Tiger and his wife to the defendants. The suit was commenced in the Superior Court, Chancery Division, by order of the referee in bankruptcy and resulted in a judgment for the plaintiff. The defendants' appeal to the Appellate Division is certified here on our own motion.

Tiger and one Irving Krause owned one-third and two-thirds, respectively, of the stock of Fairlawn Food Center,

Inc., which operated a food market in Fairlawn. Sometime in the early part of 1948, Tiger asked the defendant, Goldstein, who describes himself as a business broker, to try to obtain a purchaser for the store. Goldstein was unsuccessful during a period of several weeks. Meanwhile, Tiger was encountering financial difficulties which ultimately prompted him to seek Goldstein's aid in procuring a loan of $10,000 to provide immediate cash for the operation of the business and to enable Tiger to buy out Krause's interest. After some negotiation, Goldstein told Tiger he thought he would be able to lend him $9,000, less a $900 commission or bonus, and to this Tiger agreed.

To raise the required $8,100, Goldstein applied to the Second National Bank in Paterson. The bank was unwilling to lend the money on his signature alone so he asked Zimel, an attorney, to join with him in the transaction. The bank thereupon made the loan to them by a cashier's check dated July 22, 1948, in the sum of $8,100 and payable to the order of both defendants.

The day before the bank loan was made, Tiger and Krause had met with the defendants in Zimel's office in Paterson. There Zimel produced various documents he had prepared, including one transferring the business from Fairlawn Food Center, Inc., to the Tigers and a chattel mortgage covering the contents of the store running from Nathan and Jean Tiger to the defendants. There is some dispute as to what occurred at this meeting. The plaintiff alleges a check for $9,000, drawn by Zimel and payable to Nathan and Jean Tiger, was endorsed by Tiger with both names and immediately returned to Zimel, who wrote "Cashed" across its face and put it in his file. The defendants assert Tiger and Goldstein took the check to Fairlawn in order to obtain Mrs. Tiger's endorsement and returned it later in the day to Zimel, who marked and filed it.

An assignment of the chattel mortgage to the bank, as security for the $8,100 loan, was executed by the defendants and Zimel gave Tiger a check for $2,000 and cash in the

amount of $352.27 and to Krause he gave a check for $3,000 dated July 26, 1946. Krause received also, from the Tigers, a second mortgage on the same chattels to secure the payment of the balance due him for his interest in the business.

On the following day, July 22nd, the mortgage was recorded in the office of the Bergen County Clerk and Zimel paid $1,915.91 by certified check to one of Tiger's creditors and on July 26th paid Tiger $731.82 and credited himself with a $100 counsel fee for his services in the transaction.

These payments totaled $8,100, the amount of the bank loan. The defendants account for the remainder of the alleged $9,000 loan to Tiger by saying Goldstein gave Zimel a check for $900 which the latter returned to him as payment of his commission in negotiating the sale of the market to the Tigers. On the stand, Goldstein admitted on cross-examination that this alleged commission was in actuality a charge for arranging the loan.

The Tigers defaulted in their monthly payments to the defendants, who thereupon instituted proceedings to foreclose the chattel mortgage. The foreclosure sale was held on October 6, 1948, and, there being no other bidders, the property was bought in by Zimel on behalf of himself and Goldstein for $100. Shortly thereafter, they resold the property for $9,500.

On November 15, 1948, Tiger filed a voluntary petition in bankruptcy and on December 8th the plaintiff was appointed trustee. He brought this action to have the chattel mortgage given by the Tigers to the defendants declared void, claiming the affidavit, dated July 21, 1948, and reciting a cash loan of $9,000 made on that date as the consideration, was false and the mortgage, therefore, under *R. S.* 46:28–5, "absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith."

The plaintiff alleges the affidavit is false because the actual loan was only $8,100, the amount paid to the Tigers or paid out by Zimel on their behalf, since it was never the intention

of the parties that the Tigers should receive or control the disposition of the $900 commission or bonus.

The defendants assert the loan was completed on July 21st when Zimel gave Tiger a check for $9,000 which the latter and his wife endorsed. The check, it is argued, may be regarded as the equivalent of cash and thus was, in effect, a cash loan made on July 21st as stated in the affidavit. After the check was returned to Zimel, he was acting as attorney for Tiger in making payments to him and to others, including Goldstein, at his order and on his behalf.

Zimel admits that he never during this period had $9,000 in his account to pay the check but asserts he had the money available if needed. Because of the arrangement between him and Tiger, however, it was not necessary to clear the check through the bank.

A check may, in some circumstances, be regarded as the equivalent of cash where it is payable on presentation, there are funds on deposit sufficient to cover it and, by delivery, the mortgagee puts it in the power of the mortgagor immediately to convert it into cash. *Abeles v. Guelick,* 101 *N. J. Eq.* 180 (*Ch.* 1927).

Here, however, there was no delivery of the check to Tiger which put it within his power to convert it into cash. Even accepting the defendants' version, that Tiger had the check long enough to take it to Fairlawn, escorted by Goldstein, to obtain his wife's endorsement, the record shows the parties intended the delivery to be conditioned upon Tiger's return of it to Zimel without having presented it for payment. When Tiger had the check in his hands, briefly, on July 21st, there was in Zimel's account at the Second National Bank the sum of $659.15. Under these circumstances, the $9,000 check cannot be considered the equivalent of cash. The conditional delivery of it to Tiger, for the purpose of endorsement only, conferred no tangible benefit upon him nor imposed any actual detriment upon the defendants.

It was not until payments were made to him and to his creditors, on July 21st and the ensuing days, that he actually

received any part of the loan for which he had given the chattel mortgage as security. The total amount of these payments was $8,100. The defendants' account of the payment of the other $900 is, as the court below found, "worthy of comment, though not of consideration." The bank had advanced only $8,100 so, in order to make up the $9,000, Goldstein gave Zimel his check for $900. This, by coincidence, happened to be exactly the amount of the fee due Goldstein for his services in procuring the loan, so Zimel returned the check to him. It was not produced at the hearing, nor was Tiger present when the exchange allegedly took place.

This story does not sustain the defendants' contention that the $900 was part of the loan made to Tiger and disbursed by Zimel as his attorney acting pursuant to his instructions. On Goldstein's own admission at the trial, it was a fee exacted from Tiger as a condition of his getting a loan. Their own version, given full weight and viewed in the light most favorable to them, clearly discloses their intention and understanding that Tiger should have no use of or control over the $900. It follows that the true amount of the loan made to him was, at most, $8,100.

The affidavit of consideration, in the form required by the statute, is essential to a chattel mortgage valid against creditors of the mortgagor. *Graham Button Co. v. Spielmann*, 50 *N. J. Eq.* 120 (*Ch.* 1892); *Kauffman v. Utility Trucking Co.*, 120 *N. J. Eq.* 576 (*E. & A.* 1936); *DeYoe v. Harper Brothers, Inc.*, 121 *N. J. Eq.* 599 (*E. & A.* 1937); *Bruck v. The Credit Corp.*, 3 *N. J.* 401 (1950). An affidavit which affirms the true consideration to be a loan by the mortgagee to the mortgagor greater than the sum actually lent at the time the affidavit was made renders the mortgage void as against creditors. *Bigel v. Brandljen & Kluge, Inc.*, 129 *N. J. Eq.* 537 (*Ch.* 1941); affirmed, 131 *N. J. Eq.* 119 (*E. & A.* 1941); *Finkel v. Famous Lunch Room Co.*, 100 *N. J. Eq.* 85 (*Ch.* 1926). In *DeYoe v. Harper Brothers, Inc., supra*, an affidavit which failed to state that part of the consideration represented bonus moneys was held defective. In the latter

case, the court, citing *Moore v. Preiss Trading Corp.*, 119·
*N. J. Eq.* 366 (*Ch.* 1936); affirmed, 120 *N. J. Eq.* 214
(*E. & A.* 1936), and *Lion Shoe Co. v. Price*, 108 *N. J. Eq.*.
553 (*Ch.* 1931), said:

> "It is held that the true consideration must be set forth not merely
> particularly but completely, and that the whole instrument must stand·
> or fall together so that a partial compliance will not validate the·
> mortgage even to the extent of the consideration which is truthfully·
> set forth."

In the present case, the affidavit did not correctly set forth
the true facts concerning the consideration given for the mort-
gage. Applying the statutory rule, as enunciated in the cited
cases and the many similar cases in this State, to the facts·
here recounted in the record, we find the chattel mortgage
void as to those persons entitled to invoke the protection of·
*R. S.* 46:28–5.

The next ground for reversal urged by the defendants is·
that there is no proof there are any creditors of Nathan Tiger·
represented by the plaintiff and, more specifically, no proof·
of any creditor whose claim antedates the recording of the·
mortgage. Lacking this, it is asserted the plaintiff has not
established his status to attack the mortgage.

True, a chattel mortgage accompanied by a defec-
tive affidavit is not totally void. It is, for example, valid as·
between the original parties. *Fidelity Trust Co. v. Staten
Island Clay Co.*, 70 *N. J. Eq.* 550 (*Ch.* 1905); *W. D. Cashin
& Co. v. Alamac Hotel Co., Inc.*, 98 *N. J. Eq.* 432 (*Ch.* 1925);
*Seacoast Finance Corp. v. Cornell*, 104 *N. J. L.* 24 (*Sup. Ct.*.
1927). Moreover, a chattel mortgage, void as to creditors for·
want of the statutory affidavit, is nevertheless valid against
the claims of a receiver of an insolvent corporation unless it
appears he is contesting it for the benefit of creditors. *Fidelity·
Trust Co. v. Staten Island Clay Co., supra; Bigel v. Brandtjen
& Kluge, Inc., supra.*

Here, however, we do not have a receiver in a Chan-
cery proceeding in the state court but a trustee in bankruptcy
appointed pursuant to the proceeding initiated by Tiger in·

the federal court. He exercises the powers and rights with which he is invested by federal enactments and comes under the cloak fashioned by 11 *U. S. C.*, § 110(c):

"The trustee, as to all property in the possession or under the control of the bankrupt at the date of bankruptcy or otherwise coming into the possession of the bankruptcy court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists * * *.".

The trustee is thus possessed of those special rights and remedies conferred upon creditors by both state and federal law and designed to secure the preservation of the insolvent estate as a fund for the benefit of all the creditors. He may avoid any transfer of property by the bankrupt which any of his creditors might have avoided and recover the property so transferred or its value. The rights thus conferred upon the trustee are primary and not derivative. *Whitfield v. Kern,* 122 *N. J. Eq.* 332 (*E. & A.* 1937). It was not incumbent upon the plaintiff, therefore, to show that he represented creditors of Tiger nor that their claims antedated the execution and recording of the chattel mortgage. Our state statute, *R. S.* 46:28–5, provides that a chattel mortgage not accompanied by a proper affidavit of consideration is "absolutely void against the creditors of the mortgagor." Since the trustee is, without further proof, deemed to represent such creditors and is possessed of such rights as they would have, his status to attack the mortgage in question is not open to controversy.

Finally the defendants assert that their equities are superior to those of the trustee or any creditor of Tiger so that a judgment against them is contrary to right and justice.

The issue thus raised is not properly the subject of consideration here. This action is ancillary to the proceedings in the bankruptcy court and was instituted by order of the referee to determine the rights and liabilities of the parties under state law. The establishment of the authenticity, amount and priority of the various claims made against the

bankrupt's estate is a matter of federal procedure in administering the Bankruptcy Act.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.