**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3838-17T3

PEDRO LIRANZO,

      Petitioner-Respondent,

v.

MORALES AUTO REPAIR
& JUNIOR MORALES,
Individually,

      Respondent-Appellant.

_____

Submitted October 15, 2019 – Decided February 14, 2020

Before Judges Rothstadt and Mitterhoff.

On appeal from the New Jersey Department of Labor & Workforce Development, Division of Workers' Compensation, Passaic County, Claim Petition No. 2012-934.

Harkavy Goldman Goldman & Gerstein, attorneys for appellant (Martin S. Goldman, on the brief).

Wegner Wegner & Ward, PC, attorneys for respondent (Peter F. Ward, on the brief).

Charlotte Cherie Kelley, attorney for respondent Uninsured Employer's Fund.

PER CURIAM

In this appeal from a judge of compensation's award to an employee, the employer, Morales Auto Repair (MAR) and its owner, Junior Morales, challenge the judge's determination that the employee, Pedro Liranzo, was employed by Morales or his business when Liranzo sustained injuries, entitling Liranzo to benefits under the Workers' Compensation Act, N.J.S.A. 34:15-1 to 34:15-146. We vacate the award and remand for reconsideration because we conclude the judge's findings, and his failure to articulate any legal basis for his determination undermines our ability to perform a meaningful appellate review.

The facts derived from the record are summarized as follows. Liranzo filed a 2012 petition for workers' compensation benefits against Morales after he injured his right hand falling off a ladder while working on MAR's sign. In his answer, Morales denied Liranzo's request for compensation and claimed that Liranzo was not a MAR employee.

The parties' dispute was tried by the judge of compensation over two days in 2017. At trial, both parties appeared and testified as to the nature of Liranzo's relationship with MAR.

According to Liranzo's testimony, in November 2011, he was introduced to Morales by a friend. At that time, Liranzo had just been laid off by his former employer, Frost King, and was looking for work. The friend introduced Liranzo to Morales because Liranzo had prior experience working on automobile tires.

Liranzo met with Morales at MAR's Bridge Street location in Paterson. Liranzo stated Morales hired him and told him his pay would be $350 a week. According to Liranzo, he and two others were to perform "general mechanic work" for MAR, including balancing tires, performing tune-ups, and maintaining transmissions. Liranzo also stated he was given a blue uniform with the name of the business on the left-side chest pocket.

Addressing his injury, Liranzo testified that on Thursday of his first week of employment, Morales asked him to install the sign. As he was installing the sign, using a ladder given to him by Morales, he fell, injuring his right hand, after something struck the ladder and caused him to fall. Liranzo was then taken to a hospital where he received an injection for the pain and had surgery the following day. According to Liranzo, he later underwent physical therapy through August 10, 2012 and testified that he has lost some functionality in his right hand.

A-3838-17T3

After his fall, Morales paid Liranzo $350 in cash for the days he worked. Liranzo later received unemployment benefits for approximately the next two years. His benefits, however, were based upon his prior employment with Frost King, which Liranzo identified as his last employer when applying for those benefits. According to Liranzo, he listed Frost King because Morales paid him in cash and for that reason, he did not believe he would be able to collect benefits based on his employment with MAR. Later, Liranzo found work at a furniture factory and at a clothing company.

Morales testified to a different version of his hiring of Liranzo. According to Morales, MAR had two locations: one on Market Street in Paterson and the other was the Bridge Street location. Morales had just recently leased the Bridge Street property but did not begin any operations there because the premises were covered with garbage. He hired Liranzo for the sole purpose of cleaning up that site in exchange for a one-time payment of $1,000.

According to Morales, Liranzo worked at the Bridge Street location alone. He stated that Liranzo was never given a uniform. Morales also testified that Liranzo brought his own tools to clean the premises. Morales knew Liranzo did not have a car but did not know how Liranzo brought his tools to the premises.

4

Although Morales was seldom on site, he would open the location for Liranzo in the morning and return in the evening to close the premises.

Addressing Liranzo's injury, Morales stated he never asked Liranzo to install a sign and only instructed him on cleaning up the property. He learned about Liranzo's fall from another individual, who called him and informed him that Liranzo fell from the ladder and was injured, at which point Morales drove to the Bridge Street location to see Liranzo. After observing Liranzo's injury, Morales told the individual who had called him to drive Liranzo to the hospital.

When Morales asked Liranzo what he was doing on the ladder, Liranzo told him he was placing a plastic protector onto the bottom of the sign. According to Morales, Liranzo performed this action on his own, without Morales's direction.

After Liranzo could no longer clean the premises, Morales hired another individual to finish the job. Morales, however, would periodically call Liranzo to see how he was doing and gave Liranzo approximately $500 to pay for pain medication, spread out over four separate payments.

After considering the parties' testimony the judge of compensation issued an oral decision on March 22, 2018, which he placed on the record. That same day, the judge entered an order for judgment awarding Liranzo $120,428.75 for

permanent disability, temporary disability, medical fees, hospital expenses, attorney fees, and legal reimbursements.

In his oral decision, the judge of compensation explained the basis for his finding that Liranzo was an employee and that he was injured during the course and scope of his employment with Morales. Explaining his reasons, the judge stated the following:

> In the present matter, although I find [Liranzo]'s testimony at times to be somewhat at odds to which work he was actually doing, [Morales] did admit that he hired [Liranzo] to work for him. Furthermore, he saw [Liranzo] on the date and place of accident, actually paid [Liranzo] in cash for part of the agreed upon weekly salary and subsequently gave [Liranzo] cash to pay for medicines. As such, I find that employment has been established by a preponderance of the credible evidence that [Liranzo] suffered an injury to his right hand on November 18, 2011 out of and in the course of his employment; thereby making his injury compensable.

This appeal followed.

"Appellate review of [factual findings in] workers' compensation cases is 'limited to whether the findings made could have been reached on sufficient credible evidence present in the record . . . with due regard also to the agency's expertise[.]'" Hersh v. Cty. of Morris, 217 N.J. 236, 242 (2014) (second and third alterations in original) (quoting Sager v. O.A. Peterson Constr., Co., 182

N.J. 156, 164 (2004)). We also defer to the judge's opportunity to observe and hear the witnesses, to evaluate their credibility, and to the judge's expertise in the field of workers' compensation. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965). However, "the judge of compensation's legal findings are not entitled to any deference and, thus, are reviewed de novo." Hersh, 217 N.J. at 243.

The Workers' Compensation Act provides an exclusive remedy for injuries sustained in an "accident arising out of and in the course of employment." N.J.S.A. 34:15-7. "We have long recognized that [the Workers' Compensation Act] is remedial legislation and should be given liberal construction in order that its beneficent purposes may be accomplished." Kocanowski v. Twp. of Bridgewater, 237 N.J. 3, 10 (2019) (alteration in original) (quoting Estate of Kotsovska v. Liebman, 221 N.J. 568, 584 (2015)). "For more than a century, the Workers' Compensation Act has provided employees injured in the workplace 'medical treatment and limited compensation "without regard to the negligence of the employer."'" Vitale v. Schering-Plough Corp., 231 N.J. 234, 250 (2017) (quoting Estate of Kotsovska, 221 N.J. at 584). The employer "assumes an absolute liability[,] [but] gains immunity from common-law suit, even though he [may] be negligent, and is left

with a limited and determined liability in all cases of work-connected injury." Ibid. (first alteration in original).

Employees are the express beneficiaries of the Workers' Compensation Act. Employees are defined by N.J.S.A. 34:15-36, as "all natural persons, including officers of corporations, who perform service for an employer for financial consideration." Independent contractors are not included in this definition and are not entitled to benefits under the Act. Auletta v. Bergen Ctr. for Child Dev., 338 N.J. Super. 464, 471 (App. Div. 2001).

When assessing a worker's employment status in the context of social legislation, D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 122-24 (2007), "for purposes of determining whether the Compensation Act applies," Estate of Kotsovska, 221 N.J. at 595, a court of compensation is to apply these twelve factors to determine whether an injured party is an employee under the Act:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation—supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer"; (10) whether the worker accrues retirement benefits; (11) whether the

"employer" pays social security taxes; and (12) the intention of the parties.

> [Id. at 594 (quoting Pukowsky v. Caruso, 312 N.J. Super. 171, 182-83 (App. Div. 1998)).]

In addition, a court should consider "the worker's economic dependence on the work relationship," D'Annunzio, 192 N.J. at 122, when determining a person's employment status. Estate of Kotsovska, 221 N.J. at 595. This consideration looks to whether the worker's "labor was a cog in the wheel of [the employer's] operation as a subcontractor of [the employer] in as realistic a sense as the [work] being done by [the employer's] regular employees." Caicco v. Toto Bros., Inc., 62 N.J. 305, 310 (1973). Further, "[t]he independence of [the worker] is not to be determined by looking at the [worker] or job alone, but by judging how independent, separate and public his [or her] business service is in relation to a particular employer." Dee v. Excel Wood Prods. Co., 86 N.J. Super. 453, 460 (App. Div. 1965). Thus, this assessment is considered together with the factor addressing the integration of the employee's business with that of the employer's. See D'Annunzio, 192 N.J. at 122-23 (holding "the worker's economic dependence on the work relationship," along with the other two considerations, is assessed under the twelve-part test).

A-3838-17T3

Applying the above factors to the case under review, we cannot determine whether the record supports the judge of compensation's conclusions that Liranzo was an employee of MAR at the time of the accident and, thus, the injuries he sustained were compensable. In this contested matter in which the two witnesses told completely different stories about Liranzo's employment status, the judge of compensation made no credibility findings, other than stating Morales confirmed some aspects of Liranzo's testimony, such as that he was hired and paid in cash. The judge also failed to make any effort to apply whatever facts he found to the applicable law.

Under these circumstances, we conclude the judge did not satisfy his obligations under Rule 1:7-4. See R. 1:7-4(a) ("The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon . . . ."). "Naked conclusions do not satisfy the purpose of [Rule 1:7-4(a)]. Rather, the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions." Curtis v. Finneran, 83 N.J. 563, 570 (1980); accord Gnall v. Gnall, 222 N.J. 414, 428 (2015). "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Giarusso v. Giarusso, 455 N.J. Super. 42, 53-

54 (App. Div. 2018) (quoting <u>Strahan v. Strahan</u>, 402 N.J. Super. 298, 310 (App. Div. 2008)).

We are therefore constrained to vacate the judge of compensation's award and remand for reconsideration and the issuance of a new judgment supported by a written or oral decision with the requisite credibility determinations, findings of fact, and conclusions of law. In doing so, we do not express any opinion on the merits of the positions taken by either party or in any way suggest an outcome for their dispute.

Vacated and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3838-17T3