SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

### Estate of Myroslava Kotsovska v. Saul Liebman (A-89-13) (073861)

**Argued March 16, 2015 -- Decided June 11, 2015**

**SOLOMON, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the Workers' Compensation Act (Compensation Act) divests the Superior Court of jurisdiction to adjudicate the issue of a worker's employment status once a defendant raises the exclusive remedy provision of the Compensation Act as an affirmative defense. The Court also considers whether, in the circumstances presented here, the jury charge was so deficient as to require reversal.

In September 2008, after defendant's daughter decided he needed a live-in assistant, she and defendant met with decedent. Decedent agreed to move in with defendant and to work seven days a week in exchange for $100 per day. Decedent's duties included preparing three meals a day for defendant, doing laundry, housekeeping, and accompanying him on errands. Neither of the parties prepared any documentation, nor did they discuss the duration of the arrangement. A month after decedent began working for defendant, he asked her to accompany him to a diner. When they arrived, defendant pulled over and let decedent out of his car. While attempting to park, defendant accidentally drove onto the sidewalk where decedent was standing and pinned her against the wall, severing her leg. Decedent died shortly thereafter from her injuries. Petitioner, the administrator of decedent's estate, filed a wrongful death action against defendant. Defendant conceded his negligence, but asserted that decedent was his employee and that, therefore, petitioner was entitled to recovery only under the Compensation Act.

Defendant moved to dismiss the complaint and to transfer the matter to the Division of Workers' Compensation (Division), arguing that the Superior Court lacked jurisdiction to resolve the dispute. The trial court denied the motion. After discovery, defendant filed a motion for summary judgment raising the same argument. The court rejected defendant's argument and denied the motion and subsequent motion for reconsideration. Because defendant conceded negligence, the sole contention at trial was the nature of decedent's economic relationship with defendant. At trial, the judge instructed the jury that it would need to decide by a preponderance of the evidence whether decedent was an employee or an independent contractor and explained the factors that it should consider in reaching that conclusion. The judge also informed the jury that it should give whatever weight it deemed appropriate to the facts. The jury returned a verdict in favor of petitioner, found that decedent was an independent contractor and awarded decedent's estate a total of $525,000 in damages.

Defendant appealed and, in a published opinion, the Appellate Division reversed. Estate of Kotsovska v. Liebman, 433 N.J. Super. 537, 541 (App. Div. 2013). Relying on this Court's decisions in Kristiansen v. Morgan, 153 N.J. 298 (1998), and Wunschel v. City of Jersey City, 96 N.J. 651 (1984), the panel concluded that the Division had primary jurisdiction over the dispute regarding decedent's employment status. The panel rejected defendant's challenges to the damages award, reversed the judgment on liability only, and remanded the matter to the Division for a determination of decedent's employment status. This Court granted plaintiff's petition for certification. 217 N.J. 587 (2014).

**HELD**: When there is a genuine dispute regarding a worker's employment status, and the plaintiff elects to file a complaint only in the Superior Court Law Division, the Superior Court has concurrent jurisdiction to resolve the dispute.

1. Under the Compensation Act, when an employer and employee have, by express or implied agreement, accepted the provisions thereof, employers must compensate employees for work-related injuries arising out of and in the course of employment without regard to the negligence of the employer. N.J.S.A. 34:15-7. This provision is intended to ensure that workers' compensation provides the exclusive remedy for employees who sustain work-related injuries. The Compensation Act defines an employee as a natural person who performs a service for an employer for financial consideration. Independent contractors, which are not addressed in the Compensation Act,

are neither entitled to benefits nor subject to the limitations of the Compensation Act. Accordingly, parties cannot be presumed to have accepted the provisions of the Compensation Act until a determination is made as to whether the worker was an employee or an independent contractor. (pp. 13-18)

2. The Division has exclusive original jurisdiction of all claims for workers' compensation benefits under this chapter. N.J.S.A. 34:15-49(a). The Superior Court should resist the assertion of jurisdiction in cases where it is evident the matter should be tried elsewhere, but where there is a genuine question of jurisdiction, this Court perceives no statutory injunction against the trial of that issue in either forum. In contrast to the cases relied upon by defendant and the Appellate Division, here there was a genuine dispute regarding decedent's employment status. Petitioner has never suggested that decedent was defendant's employee, and in fact maintained that decedent was an independent contractor after defendant raised the exclusive remedy defense under N.J.S.A. 34:15-8. Moreover, petitioner did not file a petition for workers' compensation with the Division. Thus, there was no claim pending before the Division over which it could assert jurisdiction. The Court, therefore, concludes that the Superior Court had jurisdiction to decide the question of decedent's employment status. (pp. 18-20)

3. Having determined the Superior Court had jurisdiction, the Court considers whether the trial court erred in declining to transfer plaintiff's claim to the Division under the doctrine of primary jurisdiction. The decision to invoke the doctrine of primary jurisdiction rests within the sound discretion of the trial court and should not be disturbed on appeal unless the decision was made without a rational explication, inexplicably departed from established practices, or rested on an impermissible basis. The trial court did not abuse its discretion in declining to dismiss the matter pending a determination by the Division of decedent's employment status. The forum best suited to decide employment issues is the Compensation Court, but it is in no better position to make the threshold determination of a worker's employment status than the Superior Court. (pp. 20-22)

4. The Court disagrees with the Appellate Division's conclusion that Wunschel and Kristiansen compel a different conclusion. In both Wunschel and Kristiansen, the plaintiffs filed workers' compensation petitions, thereby acknowledging that the decedents were employees rather than independent contractors. Here, however, petitioner elected to file only a wrongful death action in the Superior Court, and decedent's employment status is vigorously disputed. While the sole issue in dispute here is an employment issue, that issue falls well within the knowledge of the Superior Court. Accordingly, this Court rejects the Appellate Division's finding that the Division had primary jurisdiction over the question of decedent's employment status. (pp. 23-25)

5. Further, in the context of the jury charge at issue here, the Court notes that the first step in assessing the sufficiency of a contested jury charge requires an understanding of the legal principles pertinent to the jury's determination. Our courts have utilized two different but related tests to distinguish employees from independent contractors: (1) the control test, which is grounded in the common law master-servant relationship; and (2) the relative nature of the work test, which is used in various situations in which the control test does not emerge as the dispositive factor. Under the control test, the factfinder considers the extent of the employer's right to control the work of the employee. By contrast, the relative nature of the work test requires a court to examine the extent of the economic dependence of the worker upon the business he serves and the relationship of the nature of his work to the operation of that business. The Court has previously held that when social legislation must be applied in the setting of a professional person or an individual otherwise providing specialized services allegedly as an independent contractor, the trial court should consider: (1) employer control; (2) the worker's economic dependence on the work relationship; and (3) the degree to which there has been a functional integration of the employer's business with that of the person doing the work at issue. In assessing these factors, we approved of the hybrid test established by the Appellate Division in Pukowsky v. Caruso, 312 N.J. Super. 171, 182-83 (App. Div. 1998). The Court hold that the test for determining those aspects of a non-traditional work relationship set out in Pukowsky applies in the context of a dispute over the applicability of the Compensation Statute. (pp. 25-31)

6. Next, the Court considers whether the jury charge here, which followed Model Jury Charge (Civil) § 5.10I(A), warranted reversal. Here, the model charge was applied to aid the jury in its determination of decedent's employment status in the context of social legislation. Because the charge given here was used in a context different from the specific purpose for which the charge was adopted, the presumption of propriety that attaches to a trial court's reliance on the model jury charge does not apply. A comparison between Model Jury Charge (Civil) § 5.10I(A) and the hybrid approach shows that the trial court did not instruct the jury as to each factor. Nevertheless, to the extent such omissions

were error, under the unusual facts of this case, the charge was not so erroneous as to require reversal.  (pp. 31-33)

7. Here, decedent entered into a loosely defined service contract, which was made terminable at will by either party. Decedent, who was not a caretaker by trade, had no social security number, and was not permitted under the terms of her visa to work in this country, agreed to provide general services on an as-needed basis, and retained the discretion to determine the parameters of that service.  The trial judge informed the jury that it is not important whether or not defendant ever exercised control, but rather the extent to which the right to control existed.  The jury charge failed to instruct the jury with regard to the importance of whether decedent's employment was supervised or unsupervised. However, the record indicates that, apart from defendant's daughter occasionally checking in on decedent and her father, decedent's work was entirely unsupervised. The jury charge also failed to instruct the jury on the importance of whether there was an annual leave policy, whether decedent accrued retirement benefits, and whether defendant paid social security taxes.  However, each of these factors suggested that decedent was an independent contractor: no retirement benefits were contemplated, defendant paid no social security taxes, and there was no indication of an annual leave policy.  Although the charge could have been more artfully drafted, it did not misinform the jury as to the controlling law and was neither ambiguous nor misleading  To the extent that it omitted relevant factors for consideration under the approach the Court now endorses, those factors inured to the benefit of petitioner, and therefore did not result in prejudice to defendant.  As such, the Court concludes that the charge, though flawed, does not warrant reversal.  (pp. 33-38)

The judgment of the Appellate Division is **REVERSED**.  The verdict of the jury is **REINSTATED**.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON and FERNANDEZ-VINA join in JUSTICE SOLOMON'S opinion.  JUDGE CUFF (temporarily assigned) did not participate.**

ESTATE OF MYROSLAVA
KOTSOVSKA, by OLENA
KOTSOVSKA, Administratrix,

    Plaintiff-Appellant,

        v.

SAUL LIEBMAN,

    Defendant-Respondent.

Argued March 16, 2015 – Decided June 11, 2015

On certification to the Superior Court, Appellate Division, whose opinion is reported at 433 N.J. Super. 537 (App. Div. 2013).

Gerald D. Wixted argued the cause for appellant (Smith, Stratton, Wise, Heher & Brennan, attorneys).

Robert F. Cox argued the cause for respondent (McCreedy & Cox, attorneys).

JUSTICE SOLOMON delivered the opinion of the Court.

This case arises from the tragic death of Myroslava Kotsovska (decedent), who was fatally injured when defendant Saul Liebman, for whom decedent worked as a caretaker, inadvertently struck her with his car. Petitioner Olena Kotsovska, as administratrix of decedent's estate, filed a wrongful death action against Liebman.

1

Liebman did not dispute that decedent's injuries were the result of Liebman's negligence. Instead, Liebman argued that, because decedent was his employee, petitioner could recover only under the Workers' Compensation Act (Compensation Act), N.J.S.A. 34:15-1 to -142. If, as Liebman asserts, decedent was his employee, under the Compensation Act petitioner is required to file a workers' compensation petition with the Division of Workers' Compensation (Division) and may not recover for decedent's work-related injuries in tort. Conversely, if decedent was an independent contractor, as petitioner asserts, the Compensation Act does not apply and petitioner properly filed a claim against Liebman in the Superior Court.

In this appeal, we are called upon to determine whether the Compensation Act divests the Superior Court of jurisdiction to adjudicate the issue of a worker's employment status once a defendant raises as an affirmative defense the exclusive remedy provision of the Compensation Act, N.J.S.A. 34:15-8. Although the Superior Court determined that it had jurisdiction to adjudicate the issue of decedent's employment status, the Appellate Division found that the doctrine of primary jurisdiction required the trial judge to transfer the matter to the Division as soon as the workers' compensation defense was raised. We conclude that when, as here, there is a genuine dispute regarding the worker's employment status, and the

2

plaintiff elects to file a complaint only in the Law Division of the Superior Court, the Superior Court has concurrent jurisdiction to resolve the dispute.

We must also determine whether, as the Appellate Division found, the jury charge given was so deficient that reversal was required. This Court in D'Annunzio v. Prudential Insurance Co. of America, 192 N.J. 110, 122-24 (2007), adopted a framework for assessing a worker's employment status in the context of social legislation. We now endorse that framework for use in ascertaining a worker's employment status for purposes of determining whether the Compensation Act's exclusive remedy provision applies. Although the jury charge given here did not fully reflect the considerations set forth in D'Annunzio, the factors omitted either inured to the benefit of petitioner or were irrelevant under the facts of this case. Thus, we cannot conclude that the jury instruction had the capacity to confuse or mislead the jury.

Consequently, we reverse the judgment of the Appellate Division and reinstate the jury's verdict.

I.

The undisputed facts of this case are briefly summarized as follows. In September 2008, Liebman's daughter Robin Ross decided that Liebman, then eighty-nine years old and living alone, was in need of a live-in assistant. Ross inquired among

3

her friends for a suitable candidate, and was introduced to decedent through a mutual acquaintance.

Decedent met with Ross and Liebman.  Because decedent was not proficient in English, her son-in-law Oleh Baran accompanied decedent and served as a translator.  Decedent agreed to move in with Liebman and work seven days a week in exchange for $100 per day, to be paid in cash.  The parties agreed to pay decedent in cash because decedent did not have a social security number or a bank account, and therefore could not cash a check.  Decedent's duties included preparing three meals a day for Liebman, doing Liebman's laundry, performing "light housekeeping" duties "as needed," accompanying Liebman on errands, and assisting Liebman generally in "getting around."

No documentation regarding the work agreement was prepared, exchanged, or requested.  The parties did not discuss the duration of the arrangement; nor did they discuss decedent's immigration status or whether she was authorized to work in the United States.[1]  The parties agreed that decedent would have some vacation time around the holidays, but did not discuss how long the vacation time would be or if the vacation time would be paid.  Ross asked if decedent had health insurance, to which

---

[1] According to Olena Kotsovska, decedent's visa did not authorize her to work in the United States.  Olena testified that she did not inform Ross or Liebman of this fact because they "didn't ask those questions."

4

Baran replied that he and Olena would take care of decedent's medical bills "personally" if the need arose.

Decedent started work immediately. Ross testified that she "checked in" on decedent "occasionally," and that it was her understanding that decedent had "a lot of independence" in how she chose to perform her duties and when to take time off. According to Ross, either party was free to terminate the arrangement at any time.

Little more than one month after decedent began working for Liebman, Liebman asked decedent to accompany him to a diner because he needed help with errands. As they arrived at the diner, Liebman pulled over and let decedent out of his car. While attempting to park, Liebman accidentally drove over the curb onto the sidewalk where decedent was standing and pinned decedent against the wall of the diner, severing her leg below the knee. Decedent died shortly thereafter from her injuries.

Petitioner filed a wrongful death action against Liebman, alleging that decedent's death was the result of Liebman's negligence. Liebman conceded negligence, but asserted that decedent was his employee and that, therefore, petitioner was entitled to recovery only under the Compensation Act.

Liebman filed a motion to dismiss the complaint and to transfer the matter to the Division, arguing that the Superior Court lacked jurisdiction to resolve employment status disputes

5

for purposes of determining whether the Compensation Act's exclusive remedy provision, N.J.S.A. 34:15-8, applies.  The trial court denied the motion.  After discovery concluded, Liebman filed a motion for summary judgment raising the same argument.  Noting that plaintiff had not filed a workers' compensation petition and that therefore "there's nothing pending there for [the Division] to make a decision," the court rejected defendant's argument and denied the motion and subsequent motion for reconsideration.  Because Liebman conceded negligence, the sole contention at trial was the nature of decedent's economic relationship with Liebman.

After five days of trial, the judge instructed the jury that it would need to decide by a preponderance of the evidence whether decedent was an employee or an independent contractor. The judge defined "employee" as "a person engaged to perform services for another, the employer, and who is subject to the employer's control or right to control the physical conduct required to perform such services."  The judge then defined "independent contractor" as

> a person who in carrying on an independent business contracts, independent from the employer, . . . to do a piece of work according to h[er] own methods without being subject to the control of the employer as to the means by which the result is to be accomplished but only as to the result of the work.

6

Next, the judge explained that "there are a number of factors" to consider in determining whether decedent was an employee or an independent contractor:

> The first factor and probably the most important factor is the extent of control the person for whom the services are performed has the right to . . . exercise over the details of the services performed. If the worker is only subject to the general control and direction of the employer, then the worker is more likely to be an independent contractor.
>
> It is not important whether or not [Liebman] in this case actually ever exercised control but rather the extent to which the right to control existed. The more the control, the more likely an employer/employee relationship exists. The less . . . control, the less likely an employer/employee relationship exists.
>
> Another factor you can consider is whether the parties believed they're [sic] in a relationship of employer/employee and number three, the extent of the skill required in the performance of the services. Number four, the length of time anticipated for the performance of the services. Number five, hiring, payment of regularly weekly sum, provision of tools, supplies of a workplace and being terminable at will are factors that weigh in favor of the employer/employee relationship. Lack of payroll deductions, payment in cash are factors that weigh against the employer/employee relationship. Such other factors as may be reasonably considered [to] determine whether [Liebman] controlled or had the right to control [decedent] in the performance of her services provided.
>
> . . . .
>
> The conduct of the parties after they entered into the relationship may be significant

7

evidence about what they believed the relationship to be.

The judge explained that the jury should consider the "quality of the factors" rather than the "quantity of factors" in considering whether decedent was an employee or an independent contractor, and that it was up to the jury to "give whatever weight you deem appropriate to the fact[s] as you find to exist to reach your decision[.]"

The jury returned a verdict in favor of petitioner, finding that decedent was an independent contractor and awarding decedent's estate a total of $525,000 in damages. The trial court denied Liebman's motion for a new trial, and Liebman filed a timely notice of appeal.

The Appellate Division reversed in a published opinion. Estate of Kotsovska v. Liebman, 433 N.J. Super. 537, 541 (App. Div. 2013). Relying on this Court's decisions in Kristiansen v. Morgan, 153 N.J. 298 (1998), and Wunschel v. City of Jersey City, 96 N.J. 651 (1984), the panel concluded that the Division had primary jurisdiction over the dispute regarding decedent's employment status "'by virtue of its statutory status, administrative competence and regulatory expertise.'" Liebman, supra, 433 N.J. Super. at 543-44 (quoting Wunschel, supra, 96 N.J. at 664). Although the panel determined that the matter "should have been transferred to the Division for a

8

determination of decedent's employment status," it held that this error alone did not warrant reversal because the Superior Court has concurrent jurisdiction to decide employment issues. Id. at 543, 547.

Nevertheless, the panel reversed, finding the jury charge addressing the distinctions between employees and independent contractors "was clearly capable of producing an unjust result." Id. at 547, 549. Observing that New Jersey courts have increasingly relied upon the "relative nature of the work" test in compensation cases, the panel determined that the jury charge should have accounted for the factors relevant to that test. Id. at 547-48. Specifically, the panel determined that decedent's economic dependence upon Liebman was "highly relevant here as decedent would appear to have been entirely economically dependent on Liebman." Id. at 548. The panel also stated that including in the charge the method of payment and lack of payroll deductions as factors weighing against a finding of an employee-employer relationship, without more explanation, "was incomplete and misleading" because of the reduced importance accorded to those factors in previous cases. Id. at 548-59.

The panel rejected Liebman's challenges to the damages award and "reverse[d] the judgment on liability only," remanding the matter to the Division for a determination of decedent's employment status. Id. at 551.

We granted plaintiff's petition for certification.  217 N.J. 587 (2014).

II.

A.

Addressing the Appellate Division's determination that the matter should have been transferred to the Division, petitioner argues that the panel's decision runs contrary to established litigation practice and finds no support in either the language of the Compensation Act or this State's jurisprudence.  Citing one published Appellate Division case and numerous unpublished Appellate Division cases, petitioner asserts that the Superior Court "has long been understood" to have jurisdiction over the issue of a worker's employment status for purposes of determining whether plaintiff's exclusive remedy is under the Compensation Act.

Petitioner acknowledges this Court's holdings in Wunschel and Kristiansen that the Division has expertise in employment matters and primary jurisdiction over compensability disputes under the Compensation Act.  However, petitioner argues that Wunschel and Kristiansen are inapposite because, in those cases, it was undisputed that the workers were employees. By contrast, here petitioner did not file a workers' compensation petition and has maintained that decedent was an independent contractor rather than an employee.

Petitioner acknowledges that the Compensation Act confers exclusive original jurisdiction upon the Division over claims arising from an employee-employer relationship, N.J.S.A. 34:15-49(a). However, petitioner argues, the statute does not confer jurisdiction upon the Division to determine the threshold question of a worker's employment status. Rather, the Compensation Act applies only to those who have accepted the statute's provisions by entering into an employee-employer relationship. See N.J.S.A. 34:15-7, -8. Thus, petitioner asserts, the appellate panel's decision improperly expanded the Division's limited jurisdiction under the Compensation Act to include the resolution of disputes regarding a worker's consent to the provisions of the statute.

Addressing the appellate panel's finding that the jury charge constituted plain error, petitioner notes that the trial court's instruction followed the Model Jury Charge on Agency, Model Jury Charge (Civil) § 5.10I(A), "Employer/Employee" (Revised 2011). According to petitioner, this jury charge substantially incorporated factors relevant to the nature of the work. Nevertheless, petitioner acknowledges that clarification of the charge may be warranted.

B.

Regarding the trial court's denial of his motion to transfer petitioner's claim to the Division, Liebman relies on

11

N.J.S.A. 34:15-9, which states that every employment contract "shall be presumed to have been made with reference to the provisions" of the Act. Based on this provision, Liebman argues that, because decedent entered into a verbal employment contract with Liebman and failed to exempt herself from the Compensation Act, the Division had primary jurisdiction to adjudicate the matter.

Liebman contends that the appellate panel's decision follows and clarifies our decisions in Wunschel and Kristiansen, which he asserts were premised on the notion that a controversy should be decided in the forum best suited to adjudicate the matter. Liebman posits that the threshold issue of a plaintiff's employment status is an employment matter, and that therefore under Wunschel and Kristiansen the issue should have been decided by the Division, the agency with the regulatory expertise necessary to address this complex employment question.

Regarding the jury charge, Liebman contends that Model Jury Charge (Civil) 5.10(I) was designed to instruct the jury on the issue of respondeat superior rather than to address disputes over a worker's employment status in the context of the Compensation Act. Liebman also asserts that the Appellate

12

Division properly determined that the jury charge given here suffered from a number of deficiencies that required reversal.[2]

## III.

Although not the basis for the Appellate Division's disposition, we begin by addressing the panel's conclusion that the Division had primary jurisdiction to decide the threshold issue of decedent's employment status.  In determining whether the Division has such jurisdiction, "we must be faithful to the legislative goals of the workers' compensation system." Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 173 (1985).  We therefore briefly review the Compensation Act and interpretive case law to provide the context necessary for our analysis.

### A.

The legislature enacted the Compensation Act in 1911, L. 1911, c. 95, to address the variety of difficulties workers encountered in attempting to recover in tort against their employers for work-related injuries.  See Millison, supra, 101 N.J. at 174 (citing W. Prosser & W. Keeton, The Law of Torts, §

---

[2] The Appellate Division did not consider Liebman's additional arguments here that the charge was erroneous because it improperly applied the term "employer" to both the employee and independent contractor contexts and never advised the jury on how independent contractors were paid.  We find no merit to either argument.

13

80 at 569 (5th ed. 1984)).[3]  The legislature sought to accomplish this by "establish[ing] a no fault system of compensation for workers who are injured or contract a disease in the course of employment."  Fitzgerald v. Tom Coddington Stables, 186 N.J. 21, 31 (2006) (quoting Brock v. Pub. Serv. Elec. & Gas Co., 325 N.J. Super. 582, 588 (App. Div. 1999), certif. denied, 163 N.J. 77 (2000)) (internal quotation marks omitted).  Thus, the Compensation Act provides employees who have sustained work-related injuries medical treatment and limited compensation "without regard to the negligence of the employer."  N.J.S.A. 34:15-7; see also Stancil v. Ace USA, 211 N.J. 276, 296 (2012) (Albin, J., dissenting).  "In essence, the [Compensation] Act is a social compact, 'an historic trade-off whereby employees relinquish their right to pursue common-law remedies in exchange for prompt and automatic entitlement to benefits for work-related injuries.'"  Stancil, supra, 211 N.J. at 296 (Albin, J., dissenting) (quoting Charles Beseler Co. v. O'Gorman & Young,

---

[3] Prior to enactment of the Compensation Act, employer liability was greatly minimized by "the 'unholy trinity' of employer defenses -- contributory negligence, assumption of risk, and the fellow servant rule -- which served to protect the employer from legal liability even though he had failed in his duty as master to protect his servants."  Ibid.  Further, as Professor Larson observed, an injured worker faced significant difficulties in getting "the usual witnesses of the accident, usually coemployees" to testify against their employers.  3 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 2.03 (2006).

14

Inc., 188 N.J. 542, 546 (2006)); see also Tlumac v. High Bridge Stone, 187 N.J. 567, 573 (2006) (noting "the remedial purpose of the Workers' Compensation Act" is "to make benefits readily and broadly available to injured workers through a non-complicated process").

"[W]e have long recognized that this system for the compensation of injured workers is 'remedial social legislation and should be given liberal construction in order that its beneficent purposes may be accomplished.'" Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 42 (2008) (quoting Torres v. Trenton Times Newspaper, 64 N.J. 458, 461 (1974)). Thus, the statute is broadly construed in favor of coverage.

B.

Mindful of the legislative purpose and goals of the Compensation Act, we turn to the language of the statute. Under the Compensation Act, "[w]hen employer and employee shall by agreement, either express or implied . . . accept the provisions of" the Compensation Act, employers shall compensate employees for work-related injuries "arising out of and in the course of employment . . . without regard to the negligence of the employer[.]" N.J.S.A. 34:15-7 (emphasis added). Absent an express disclaimer to the contrary, all parties to every employment contract made after July 1911 are "presumed [to] have

15

accepted the provisions of [the Compensation Act] and have agreed to be bound thereby[.]"  N.J.S.A. 34:15-9.

Once the employment contract is created and the employee-employer relationship is established,

> [s]uch agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in this article and an acceptance of all the provisions of this article, and shall bind the employee and for compensation for the employee's death shall bind the employee's personal representatives.
>
> [N.J.S.A. 34:15-8.]

This provision is intended to ensure that workers' compensation provides the exclusive remedy for employees who sustain work-related injuries.  Wunschel, supra, 96 N.J. at 659. As a result, "although 'the employer assumes an absolute liability[,] [h]e gains immunity from common-law suit, even though he be negligent, and is left with a limited and determined liability in all cases of work-connected injury.'" Whitfield v. Bonanno Real Estate Grp., 419 N.J. Super. 547, 553 (App. Div. 2011) (alterations in original) (quoting Dudley v. Victor Lynn Lines, Inc., 32 N.J. 479, 489 (1960)); see also Toland v. Atl. Gahagan Joint Venture Dredge, No. 1, 57 N.J. 205, 207 (1970) ("The elective provisions of [N.J.S.A. 34:15-8] were

16

only intended to deny employees their traditional common law tort remedies.").[4]

"[A]scrib[ing] to the statutory words their ordinary meaning and significance," DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citations omitted), it is clear that the benefits and the limitations of the Compensation Act apply only to "employees" who, by virtue of their employment agreements, have accepted its provisions. The Compensation Act defines the term "employee" as "synonymous with servant," to "include[] all natural persons, including officers of corporations, who perform a service for an employer for financial consideration[.]" N.J.S.A. 34:15-36.[5] By contrast, independent contractors, which are not addressed in the Compensation Act, are neither entitled

---

[4] The New Jersey workers' compensation scheme also allows either the employer or the employee to elect to "reject the ordinary system of compensatory non-fault liability," known as "Article II coverage," in favor of "Article I coverage" under N.J.S.A. 34:15-1 to -7. Naseef v. Cord, Inc., 48 N.J. 317, 322 (1966). Article I coverage provides that the employee may recover against the employer under common-law negligence, and that "the employee's claim may not be defeated by the defenses of ordinary contributory negligence (see N.J.S.A. 34:15-1), assumption of risk (see N.J.S.A. 34:15-2; McGrath v. American Cyanamid Co., 41 N.J. 272 (1963)), or negligence of a fellow-employee (see N.J.S.A. 34:15-2)." Ibid.

[5] This provision contains exemptions for "(1) employees eligible under the federal 'Longshore and Harbor Workers' Compensation Act,' for benefits payable with respect to accidental death or injury, or occupational disease or infection; and (2) casual employments." Ibid. (citations omitted). Neither exemption applies here.

to benefits nor subject to the limitations of the Compensation Act.  Auletta v. Bergen Ctr. for Child Dev., 338 N.J. Super. 464, 471 (App. Div.), certif. denied, 169 N.J. 611 (2001).  As our courts have explained, an "independent contractor" is "'one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is accomplished, but only as to the result of work.'" Ibid. (quoting Lesniewski v. W.B. Furze Corp., 308 N.J. Super. 270, 280 (App. Div. 1998)).

Accordingly, parties cannot be presumed to have accepted the provisions of the Compensation Act, including the exclusive remedy provision, until a threshold determination is made as to whether the worker was an employee or an independent contractor. With these concepts in mind, we now turn to the question of whether the Superior Court has jurisdiction to make this threshold determination.

IV.

A.

As Liebman notes, the Division has "the exclusive original jurisdiction of all claims for workers' compensation benefits under this chapter."  N.J.S.A. 34:15-49(a).  Certainly, the Superior Court "should be steadfast in [its] readiness to resist the assertion of jurisdiction in cases where it is evident the

18

matter should be tried elsewhere." Singer Shop-Rite, Inc. v.

Rangel, 174 N.J. Super. 442, 447 (App. Div.), certif. denied, 85

N.J. 148 (1980). On the other hand, "[w]here a genuine question

of jurisdiction, exclusive, primary or concurrent, is involved

we perceive no statutory injunction against the trial of that

issue in either forum[.]" Id. at 446. Indeed, as one

commentator has observed, "[d]espite the exclusivity of the

workers' compensation remedy, the Superior Court has

jurisdiction to determine the existence of the employment

relationship and such other employment issues as are raised by

way of defense to the employee's tort action." Pressler &

Verniero, Current N.J. Court Rules, comment 42.1 on R. 4:5-4 at

1414 (2014).

In contrast to the cases relied upon by Liebman and the

Appellate Division, here there was a genuine dispute regarding

decedent's employment status. Petitioner has never suggested

that decedent was Liebman's employee, and in fact maintained

that decedent was an independent contractor after Liebman raised

the exclusive remedy defense under N.J.S.A. 34:15-8. Moreover,

petitioner did not file a petition for workers' compensation

with the Division. Thus, as the trial court noted, there was no

claim pending before the Division over which it could assert

jurisdiction. Under these circumstances, we conclude that the

19

Superior Court had jurisdiction to decide the question of decedent's employment status.

B.

Having determined the Superior Court had jurisdiction, we next consider whether, as the Appellate Division found, the trial court erred in declining to transfer plaintiff's claim to the Division under the doctrine of primary jurisdiction. "The doctrine of primary jurisdiction is applicable when a case is properly filed in the Superior Court but the court declines original jurisdiction, referring specific issues to the appropriate administrative body." Magic Petroleum Corp. v. Exxon Mobil Corp., 218 N.J. 390, 405 (2014). Thus, "when enforcement of a claim requires resolution of an issue within the special competence of an administrative agency, a court may defer to a decision of that agency." Campione v. Adamar, Inc., 155 N.J. 245, 263-64 (1998).

"The decision to invoke the doctrine of primary jurisdiction rests within the sound discretion of the [trial] court." Nordstrom v. Lyon, 424 N.J. Super. 80, 99 (App. Div. 2012). Accordingly, the trial court's decision here should not be disturbed on appeal unless the decision was "made without a rational explication, inexplicably departed from established practices, or rested on an impermissible basis." Flagg v. Essex

20

Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (citation and internal quotation marks omitted).

"Although no formula exists to evaluate the applicability of primary jurisdiction," we recently stated that "our courts have been guided by a four-part test," in which the following factors are considered:

> 1) whether the matter at issue is within the conventional experience of judges; 2) whether the matter is peculiarly within the agency's discretion, or requires agency expertise; 3) whether inconsistent rulings might pose a danger of disrupting the statutory scheme; and 4) whether prior application has been made to the agency.
>
> [Magic Petroleum Corp., supra, 218 N.J. at 407 (quoting Boldt v. Correspondence Mgmt., Inc., 320 N.J. Super. 74, 85, (App. Div. 1999).]

Applying these factors to the facts before us, we conclude that the trial court did not abuse its discretion in declining to dismiss the matter pending a determination by the Division of decedent's employment status.

First, the question of a worker's employment status is a matter that is often determined by trial judges and juries. See, e.g., Re/Max of N.J. v. Wausau Ins. Cos., 162 N.J. 282, 286 (2000) (affirming Chancery Division's determination of real estate agents as "employees" under Compensation Act); see also Hargrove v. Sleepy's, LLC, 220 N.J. 289, 295 (2015) (addressing test for a plaintiff's employment status for purposes of Wage Payment Law and Wage and Hour Law); D'Annunzio, supra, 192 N.J.

21

at 120-25 (reaffirming criteria for trial court's determination of plaintiff's employment status in claims arising under Conscientious Employee Protection Act); Pukowsky v. Caruso, 312 N.J. Super. 171, 180-83 (App. Div. 1998) (addressing trial court's determination of a plaintiff's employment status in the context of the Law Against Discrimination). Indeed, as Professor Larson has observed, in addition to workers' compensation, "[t]he definition of the term 'employee' for purposes of vicarious liability, employers' liability, . . . labor legislation, unemployment compensation, social security and miscellaneous enactments applicable to employees, has probably produced more reported cases than any definition of status in the modern history of law." 3 Larson, supra, § 60.01.

Second, while we acknowledge that "[t]he forum best suited to decide employment issues is the Compensation Court," Wunschel, supra, 90 N.J. at 664, the Compensation Court is in no better position to make the threshold determination of a worker's employment status than the Superior Court. As discussed above, the Superior Court is often tasked with making this determination in a variety of contexts. Thus, this determination is not "peculiarly within the agency's discretion," or one which "requires agency expertise," Boldt, supra, 320 N.J. Super. at 85.

22

Third, there is no risk of inconsistent rulings because petitioner declined to file a petition with the Division. Consequently, we find the doctrine of primary jurisdiction does not apply to the facts of this case.

C.

Turning to the Appellate Division's reliance on our precedent, we disagree that Wunschel and Kristiansen compel a different conclusion. In Wunschel, supra, the decedent-employee, a police officer, arranged to have Sachs, his partner in the Jersey City Police Department, pick him up for work after completing a shift at a second job. 96 N.J. at 655. When Sachs arrived to pick up Wunschel, Sachs accidentally shot and killed Wunschel. Id. at 656. Wunschel's widow filed a workers' compensation petition with the Division naming both employers, and a wrongful death complaint in the Superior Court naming both employers and Sachs. Ibid.

The Division determined that Wunschel's death occurred during the course of his employment with the second employer, while the jury determined that Wunschel's death arose during the course of his employment with the police department. Id. at 657. Thus, we were presented in that case with a situation in which the Division and the Superior Court reached opposite conclusions. Id. at 657-58. Noting that "[a]voiding inconsistent results and duplication of litigation is an aim of

23

our law," we held that "[t]he forum best suited to decide employment issues is the Compensation Court."  Id. at 664.

In Kristiansen, supra, a bridge worker was struck and killed by a car after his shift had ended while on his way to an off-site parking lot.  153 N.J. at 302-04.  As in Wunschel, the decedent's widow filed a workers' compensation petition with the Division and a wrongful death action in the Superior Court, and the key issue was whether the employee-decedent was injured during the course of his employment.  Id. at 304, 306-07.  In addressing the employer's argument that the Division had primary jurisdiction to decide whether the decedent's injuries were compensable, we noted that, "[u]nlike the Wunschel case in which a fellow servant was sued in the Superior Court, here, no issue has been raised that the Division cannot decide in a manner that is binding on all the interested parties."  Id. at 311. Because, unlike in Wunschel, the Division had jurisdiction over the parties necessary to determine compensability, we determined that "the Division and not the Superior Court should have decided the compensability issues."  Id. at 311, 313.

The distinctions between these cases and the case presently before us are significant.  In both Wunschel and Kristiansen, the plaintiffs filed workers' compensation petitions, thereby acknowledging that the decedents were employees rather than independent contractors.  Here, by contrast, petitioner elected

24

to file only a wrongful death action in the Superior Court, and decedent's employment status is vigorously disputed. Unlike in Wunschel and Kristiansen, where the only issue raised was compensability, no compensability arguments have been raised here. While the sole issue in dispute here -- decedent's employment status -- is an employment issue, that issue falls well within the ken of the Superior Court. Thus, we cannot agree that the trial court was required to abstain from resolving a question that is so often before it.

Accordingly, we reject the Appellate Division's finding that the Division had primary jurisdiction over the question of decedent's employment status.

V.

A.

We turn next to the Appellate Division's conclusion with respect to the jury charge. Preliminarily, we note that "[a] jury is entitled to an explanation of the applicable legal principles and how they are to be applied in light of the parties' contentions and the evidence produced in the case." Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002) (citations and internal quotation marks omitted). Thus, a proper "jury charge must correctly state the applicable law, outline the jury's function and be clear in how the jury should apply the legal principles charged to the facts of the case at hand."

25

Ibid.  To accomplish these goals, the jury charge should be tailored to the specific facts of the case.  Reynolds v. Gonzalez, 172 N.J. 266, 289 (2002).

When a party objects to the jury charge at trial, the "reviewing court should reverse on the basis of that challenged error unless the error is harmless."  Toto v. Ensuar, 196 N.J. 134, 144 (2008) (citing R. 2:10-2).  An error is harmful only where that error is "clearly capable of producing an unjust result."  R. 2:10-2.  When presented with a contested jury charge, "a court must examine the charge as a whole, rather than focus on individual errors in isolation."  Ibid.

### B.

The first step in assessing the sufficiency of a contested jury charge, then, requires an understanding of the legal principles pertinent to the jury's determination.  Our courts have utilized two different but related tests to distinguish employees from independent contractors: (1) the "control test," which "is grounded in the common law master-servant relationship"; and (2) the "relative nature of the work test," which is used in "'various situations in which the control test does not emerge as the dispositive factor.'"  Lowe v. Zarghami, 158 N.J. 606, 615-16 (1999) (quoting Marcus v. E. Agric. Ass'n,

58 N.J. Super. 584, 597 (App. Div. 1959) (Conford, J.A.D., dissenting), rev'd on dissent, 32 N.J. 460 (1960)).[6]

Under the control test, the factfinder considers the extent of the employer's right to control the work of the employee. Ibid. (citing N.J. Prop.-Liability Ins. Guar. Ass'n v. State, 195 N.J. Super. 4, 8 (App. Div.), certif. denied, 99 N.J. 188 (1984)).  This test takes into consideration a variety of employment conditions, including "the degree of control exercised by the employer over the means of completing the work," "the source of the worker's compensation," "the source of the worker's equipment and resources," "the employer's termination rights," id. at 616, as well as the "right of termination" and the "method of payment," Aetna Ins. Co. v. Trans Am. Trucking Serv., Inc., 261 N.J. Super. 316, 326-27 (App. Div. 1993).  "The greater the degree of control exercised by the employer, the more likely the worker will be considered an employee."  Lowe, supra, 158 N.J. at 616.

By contrast, the relative nature of the work test "requires a court to examine 'the extent of the economic dependence of the worker upon the business he serves and the relationship of the

_____

[6] We note our recent approval of the "ABC" test, which is "derived from the New Jersey Unemployment Compensation Act," for use in determining whether a worker is an employee or an independent contractor for purposes of the Wage Payment Law and the Wage and Hour Law.  Hargrove, supra, 220 N.J. at 295.  For the reasons that follow, that test does not apply here.

27

nature of his work to the operation of that business.'" Lowe, supra, 158 N.J. at 616 (quoting Marcus, supra, 58 N.J. Super. at 603 (Conford, J.A.D., dissenting)). Under this test, the employer's control is "a single, but not dispositive, factor." Wajner v. Newark Beth Israel Med. Ctr., 298 N.J. Super. 116, 120 (App. Div. 1997); accord Lowe, supra, 158 N.J. at 617. Instead, it "focuses on whether there is 'substantial economic dependence' upon the 'employer' by the 'employee' and whether there has been a 'functional integration of their respective operations.'" Aetna Ins. Co., supra, 261 N.J. Super. at 327 (quoting Smith v. E.T.L. Enters., 155 N.J. Super. 343, 352, 382 (App. Div. 1978)). As Professor Larson notes, "the control test is in practice giving way to the relative-nature-of-the-work test" in part to address employers' efforts to circumvent the inconveniences created by the Compensation Act by, for example, "subcontracting portions of the employer's production and distribution process." 3 Larson, supra, § 62.01.

"Our courts have long recognized that, in certain settings, exclusive reliance on a traditional right-to-control test to identify who is an 'employee' does not necessarily result in the identification of all those workers that social legislation seeks to reach." D'Annunzio, supra, 192 N.J. at 121. For example,

28

> where the type of work requires little supervision over details for its proper prosecution and the person performing it is so experienced that instructions concerning such details would be superfluous, . . . the factor of control becomes inconclusive, and reorientation toward a correct legal conclusion must be sought by resort to more realistically significant criteria.
>
> [Id. at 122 (quoting Marcus, supra, 58 N.J. Super. at 597 (Conford, J.A.D., dissenting).]

In D'Annunzio, we noted in the context of a claim under Conscientious Employee Protection Act (CEPA), that "labels can be illusory as opposed to illuminating" when taken out of context. Ibid. We held that, when "social legislation must be applied in the setting of a professional person or an individual otherwise providing specialized services allegedly as an independent contractor," the trial court should consider three factors: "(1) employer control; (2) the worker's economic dependence on the work relationship; and (3) the degree to which there has been a functional integration of the employer's business with that of the person doing the work at issue." Ibid.

In assessing these factors, we noted with approval the "hybrid" test established by the Appellate Division in Pukowsky v. Caruso, 312 N.J. Super. 171, 182-83 (App. Div. 1998). D'Annunzio, supra, 192 N.J. at 123. In Pukowsky, which was decided in the context of a Law Against Discrimination (LAD)

29

claim, the appellate panel identified twelve factors for courts to consider when determining a worker's status:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation -- supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer"; (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.
>
> [Pukowski, supra, 312 N.J. Super. at 182-83 (quoting Franz v. Raymond Eisenhardt & Sons, Inc., 732 F. Supp. 521, 528 (D.N.J. 1990)).]

"This test is a hybrid that reflects the common law right-to-control test," D'Annunzio, supra, 192 N.J. at 123 (citing Restatement (Second) of Agency, § 220 (1957)), and the "economic realities" aspect of the nature-of-the-work test, ibid.

The Compensation Act, like CEPA and LAD, is "remedial social legislation." Cruz, supra, 195 N.J. at 42 (citation and internal quotation marks omitted). In disputes over a worker's status under the Compensation Act, as in other social legislation, "what matters most is that an individual's status be measured in the light of the purpose to be served by the applicable legislative program or social purpose to be served." D'Annunzio, supra, 192 N.J. at 122 n.7. Thus, we hold that "the

30

test for determining those aspects of a non-traditional work relationship . . . set out in Pukowski" applies in the context of a dispute over the applicability of the Compensation Statute. See id. at 122.

We note that this hybrid approach, which we now endorse for purposes of determining whether the Compensation Act applies, is not reflected in the current Model Jury Charge on Agency. To that end, we refer this issue to the Supreme Court Committee on Model Civil Jury Charges for the development and adoption of a standard charge concerning the employee-independent contractor distinction in the context of social legislation, to incorporate the hybrid test set forth above.

C.

With these principles in mind, we must consider whether the jury charge given here warranted reversal. Initially, we note that the jury charge given here followed Model Jury Charge (Civil) § 5.10I(A). "Generally speaking, the language contained in any model charge results from the considered discussion amongst experienced jurists and practitioners." Flood v. Aluri-Vallabhaneni, 431 N.J. Super. 365, 383-84 (App. Div.) (quoting State v. R.B., 183 N.J. 308, 325 (2005)), certif. denied, 216 N.J. 14 (2013).

However, a model jury charge applied to a dispute that was not contemplated by this Court or the Model Civil Jury Charge

31

Committee when drafting that charge "does not necessarily reflect the approved language" set forth by this Court. Id. at 384. In that situation, "only when the Court has occasion to address the contents of an adopted charge can . . . the trial court and practitioners[] rest assured that the language adopted is consistent with the Court's instructions." Ibid.

Here, Model Jury Charge (Civil) § 5.10I(A) was applied to aid the jury in its determination of decedent's employment status in the context of social legislation. However, except for the addition of "such other factors as may be reasonably considered in determining whether the employer has control or right to control the person employed," our Model Jury Charge (Civil) § 5.10I(A) tracks the language of section 220 of the Restatement (Second) of Agency. See Carter v. Reynolds, 175 N.J. 402, 410 (2003). Section 220 defines "servant" for purposes of establishing a principal's liability in tort under the doctrine of respondeat superior. Restatement (Second) of Agency § 220 (1958).

As this Court has acknowledged, "the test for an employer-employee relationship differs when one examines for tort-based vicarious liability purposes . . . or for social legislation purposes such as for workers' compensation coverage." D'Annunzio, supra, 192 N.J. at 122 n.7 (quoting 3 Larson, supra, § 60.04). Because the jury charge given here was used in a

32

context different from the specific purpose for which the charge was adopted, the presumption of propriety that attaches to a trial court's reliance on the model jury charge does not apply.

The question, therefore, is whether Model Jury Charge (Civil) § 5.10I(A) was appropriately molded to the facts of this case, or, if not, whether "a different outcome might have prevailed had the jury been correctly charged." Reynolds, supra, 172 N.J. at 289. A comparison between Model Jury Charge (Civil) § 5.10I(A) and the hybrid approach we now endorse shows that the trial court did not instruct the jury as to each factor outlined in Pukowski and D'Annunzio. Nevertheless, to the extent such omissions were error, under the unusual facts of this case, we do not find the charge so erroneous as to require reversal.

Here, decedent entered into a loosely defined service contract, which was made terminable at will by either party. Decedent, who was not a caretaker by trade, had no social security number, and was not permitted under the terms of her visa to work in this country, agreed to provide general services on an as-needed basis, and retained the discretion to determine the parameters of that service.

The trial judge correctly informed the jury that "it is not important whether or not [Liebman] actually ever exercised control but rather the extent to which the right to control

33

existed." The judge then cited a number of factors relevant to that determination, including (1) the parties' belief regarding the employment relationship, (2) the degree of skill necessary for performance of the work, (3) the length of time anticipated for the performance of the services, (4) the regularity and method of payment, (5) the employer's lack of payroll deductions, (6) who provides the supplies necessary for the work, and (7) whether the employment was terminable at will. The judge also instructed the jury to consider "such other factors as may be reasonably considered" to assess whether Liebman "controlled or had the right to control" decedent. Not including the catchall provision, these factors account for seven of the twelve factors identified in Pukowski and adopted for use in the context of social legislation in D'Annunzio.

The jury charge failed to instruct the jury with regard to the importance of whether decedent's employment was supervised or unsupervised. However, the record indicates that, apart from Ross "occasionally" checking in on decedent and her father, decedent's work as Liebman's caretaker was entirely unsupervised. Indeed, Ross testified that decedent maintained "a lot of independence" in the performance of her duties.

The jury charge also failed to instruct the jury on the importance of whether there was an annual leave policy, whether decedent accrued retirement benefits, and whether Liebman paid

34

social security taxes.  However, each of these factors suggested that decedent was an independent contractor: no retirement benefits were contemplated, Liebman paid no social security taxes, and there was no indication of an annual leave policy. Accordingly, inclusion of these factors in the jury charge would have supported rather than undercut the jury's determination. Because the omission of these factors did not have the capacity to change the jury's determination, the error did not warrant reversal.  Viscik, supra, 173 N.J. at 18.

Additionally, the jury charge did not instruct the jury regarding the importance of whether decedent's work was an integral part of Liebman's business.  This factor addresses a situation where the employer, who runs a business composed of two or more overlapping operations, subcontracts a portion of the work in furtherance of his or her core business.  See 3 Larson, supra, § 62.02.  Because Liebman did not run a business, let alone a complex business with multiple operations, this consideration does not apply.

The Appellate Division held that the trial court's failure to instruct the jury on the relative importance of the worker's economic dependence upon the employer was fatal because "decedent would appear to have been entirely economically dependent on Liebman."  Kotsovska, supra, 433 N.J. Super. at 548.  We agree that the degree of a worker's economic dependence

35

upon an employer is an important consideration in workers'
compensation disputes.  See, e.g., D'Annunzio, supra, 192 N.J.
at 122; Caicco v. Toto Bros., Inc., 62 N.J. 305, 309 (1973);
Hannigan v. Goldfarb, 53 N.J. Super. 190, 205 (App. Div. 1958).
However, this consideration was misapplied here.

A worker's economic dependence upon an employer is a factor
to be considered when a worker performs a function that
constitutes a part of the employer's business.  See Re/Max of
N.J., supra, 162 N.J. at 286 (finding real-estate agents to be
employees of real-estate brokers in part because "it is only the
broker that can lawfully enforce a client's obligation to pay
[the agent's] commission").  This consideration looks to whether
the "decedent's labor was a cog in the wheel of [the employer's]
operation as a subcontractor of [the employer] in as realistic a
sense as the [work] being done by [the employer's] regular
employees."  Caicco, supra, 62 N.J. at 310.  Further, "[t]he
independence of [the worker] is not to be determined by looking
at the [worker] or job alone, but by judging how independent,
separate and public his [or her] business service is in relation
to a particular employer."  Dee v. Excel Wood Prods. Co., 86
N.J. Super. 453, 460 (App. Div.) (internal quotation marks and
citation omitted), certif. denied, 44 N.J. 586 (1965).  Thus,
this assessment is considered together with the factor
addressing the integration of the employee's business with that

36

of the employer's.  See D'Annunzio, supra, 192 N.J. at 122-23 (holding "the worker's economic dependence on the work relationship," along with the other two considerations, is assessed under the twelve-part Pukowski factor test).

Here, decedent lived with Liebman and drew most, if not all of her income from her employment as Liebman's caretaker.[7] However, as previously noted, decedent's employment was not in furtherance of Liebman's business.  Thus, considering the nature of decedent's employment, it was not reversible error to fail to include this consideration in the jury charge.

Finally, we address the Appellate Division's conclusion that the portion of the trial court's instruction explaining "that the lack of payroll deductions and payment in cash are factors weighing against a finding of employment was incomplete and misleading."  These factors have been "de-emphasized," as the appellate panel observed, see Brower v. Rossmy, 63 N.J. Super. 395, 405-06 (App. Div. 1960), in the sense that our courts have recognized the comparative value of the nature-of-the-work test over the control test in the context of social legislation, see D'Annunzio, supra, 192 N.J. at 121-22; Caicco, supra, 62 N.J. at 310.  However, no case has stated that the

---

[7] As the record indicates, decedent's daughter and son-in-law agreed to provide for any of decedent's healthcare costs, and there is some indication that decedent may have been drawing a pension.

control test no longer applies. To the contrary, we have incorporated without reservation the control factors, including the method of payment and whether the employer deducts payroll taxes, into the hybrid analysis adopted in D'Annunzio, supra, 192 N.J. at 121-22. Moreover, after reciting the control factors, the trial judge instructed the jury that it "may give whatever weight you deem appropriate to the fact[s] as you find to exist to reach your decision." Considering the jury charge as a whole, we disagree that it was incomplete or misleading merely because it instructed the jury that lack of payroll deductions and the method of payment are factors for the jury to consider.

In conclusion, "[a]lthough the charge could have been more artfully drafted," Mogull v. CB Commercial Real Estate Grp., Inc., 162 N.J. 449, 466 (2000), the charge "did not misinform the jury as to the controlling law and was neither ambiguous nor misleading," R.B., supra, 183 N.J. at 325. To the extent that it omitted relevant factors for consideration under the Pukowski-D'Annunzio approach we now endorse, those factors inured to the benefit of petitioner, and therefore did not result in prejudice to Liebman. As such, we find that the charge, though flawed, does not warrant reversal.

VI.

38

Accordingly, we reverse the judgment of the Appellate Division, and reinstate the jury's verdict.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON and FERNANDEZ-VINA join in JUSTICE SOLOMON's opinion. JUDGE CUFF (temporarily assigned) did not participate.

SUPREME COURT OF NEW JERSEY

NO.    A-89                          SEPTEMBER TERM 2013

ON CERTIFICATION TO        Appellate Division, Superior Court



ESTATE OF MYROSLAVA
KOTSOVSKA, by OLENA
KOTSOVSKA, Administratrix,

       Plaintiff-Appellant,

              v.

SAUL LIEBMAN,

       Defendant-Respondent.



DECIDED          June 11, 2015
                 Chief Justice Rabner                    PRESIDING

OPINION BY            Justice Solomon

CONCURRING/DISSENTING OPINIONS BY

DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REINSTATE | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| TOTALS | 6 | |