**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0678-15T2

ROBERTA DIEUJUSTE,
individually and as
Administrator Ad
Prosequendum of the
Estate of David Pierre,
and ERNST PIERRE, and
ROBERTA DIEUJUSTE and
ERNST PIERRE, as natural
parents of W.P., E.P.,
David Pierre, A.P., and J.P.,
and ROBERTA DIEUJUSTE, as the
natural mother of V.M.,[1]

    Plaintiffs-Appellants,

v.

DIVISION OF YOUTH AND
FAMILY SERVICES,

    Defendant-Respondent.

_____

       Argued April 25, 2017 — Decided  August 1, 2017

       Before Judges Espinosa and Grall.

       On appeal from Superior Court of New Jersey,
       Law Division, Union County, Docket No. L-2792-
       11.

---

[1]  We use initials for the surviving minor children to protect
their privacy.

Robert A. Vort argued the cause for appellants.

Ashley Gagnon, Deputy Attorney General, argued the cause for respondent (Christopher S. Porrino, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; James A. McGhee, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiffs Roberta Dieujuste and Ernest Pierre are the parents of David Pierre, a four-year-old developmentally disabled child who died while in the care of a foster mother, Taleka Harriet, licensed by the Division of Youth and Family Services (DYFS).[2] They brought this wrongful death action[3] against DYFS and now appeal from an order that granted summary judgment to DYFS, dismissing their complaint. We affirm.

We need not recite the facts regarding David's tragic drowning in Harriet's bathtub. It is sufficient to note that, following its investigation, DYFS determined that Harriet's "actions placed David Pierre at some risk of harm but did not meet the statutory

---

[2] DYFS is now known as the Division of Child Protection and Permanency.

[3] The complaint also alleged that DYFS wrongfully retained plaintiffs' five children following a Dodd removal pursuant to N.J.S.A. 9:6-8.29 and 9:6-8.30. Plaintiffs have not appealed from the trial judge's dismissal of this count.

A-0678-15T2

requirement to find neglect." Harriet's license to serve as a resource provider was revoked thereafter.

Plaintiffs did not file any action against Harriet. Plaintiffs argue, however, the Family Part's award of "care, custody and supervision" of David to DYFS following the Dodd removal created a non-delegable duty that rendered DYFS liable for Harriet's negligence. They also argue that liability is properly imposed upon DYFS because Harriet was an employee of DYFS, rather than an independent contractor. We are not persuaded by these arguments.

As a governmental body, DYFS enjoys general immunity under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. The TCA provides general immunity for all governmental bodies except in circumstances where the Legislature has specifically provided for liability. See N.J.S.A. 59:1-2, :2-1; see also Bell v. Bell, 83 N.J. 417, 423 (1980). Thus, "immunity is the norm, unless liability is provided for by the [TCA]." Davenport v. Borough of Closter, 294 N.J. Super. 635, 637 (App. Div. 1996).

N.J.S.A. 59:2-1(a) states:

> Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or <u>a public employee or any other person</u>.
>
> [(Emphasis added).]

N.J.S.A. 59:1-3 defines "employee" under the TCA:

> "Employee" includes an officer, employee, or servant, whether or not compensated or part-time, who is authorized to perform any act or service; provided, however, that the term does not include an independent contractor.

In Estate of Kotsovska ex rel. Kotsovska v. Liebman, the Supreme Court observed:

> Our courts have utilized two different but related tests to distinguish employees from independent contractors: (1) the "control test," which "is grounded in the common law master-servant relationship"; and (2) the "relative nature of the work test," which is used in "various situations in which the control test does not emerge as the dispositive factor."

> [221 N.J. 568, 592 (2015) (citation omitted).]

The Court explained that, under the control test, "the factfinder considers the extent of the employer's right to control the work of the employee." Id. at 593. The "variety of employment conditions" to be considered include "'the degree of control exercised by the employer over the means of completing the work,' 'the source of the worker's compensation,' 'the source of the worker's equipment and resources,' 'the employer's termination rights,' as well as the 'right of termination' and the 'method of payment.'" Ibid. (citations omitted). "The greater the degree of control exercised by the employer, the more likely the worker

will be considered an employee." Id. at 593 (quoting Lowe v. Zarghami, 158 N.J. 606, 616 (1999)).

In New Jersey Property-Liability Insurance Guaranty Association v. State, 195 N.J. Super. 4 (App. Div.), certif. denied, 99 N.J. 188 (1984) [hereinafter NJ-PLIGA], we addressed the question whether foster parents were public employees under the TCA, and held the control test was "the proper standard to determine whether the . . . foster parents . . . are employees of the state as defined in N.J.S.A. 59:1-3," id. at 11.

In applying that test, we reviewed the statutory definition of foster parent, N.J.S.A. 30:4C-2(h), the responsibilities of the foster parent, the maintenance payments DYFS was authorized to give to foster parents for the benefit of the child in placement pursuant to N.J.S.A. 30:4C-27, and the written agreements between DYFS and the foster parents, which include the foster parents' agreement to consult with a DYFS caseworker before making important decisions. Id. at 12-13. We found, "these circumstances do not denote a degree of control by DYFS over foster parents sufficient to confer employee status . . . under the [TCA]." Id. at 13. We noted further that, under the agreement with DYFS, the foster parents' role is "more akin to that of independent contractors." Id. at 14.

A-0678-15T2

In Stanley by Stanley v. State Industries, Inc., 267 N.J. Super. 167 (Law Div. 1993), the trial court relied on our holding in NJ-PLIGA to conclude DYFS could not be held vicariously liable for the negligence of a foster parent under the doctrine of respondeat superior because there was insufficient evidence of control for the foster parent to be an employee of DYFS. Id. at 171-72.

Relying upon our decision in NJ-PLIGA and the trial court's decision in Stanley, the trial judge here rejected plaintiffs' arguments that Harriet was an employee of DYFS as defined in the TCA and that DYFS could be held vicariously liable for her negligence. Plaintiffs acknowledge these cases support the trial judge's analysis, but contend the persuasive force of these cases has been diminished by later cases decided by the Supreme Court and the Appellate Division. To support this argument, they cite D'Annunzio v. Prudential Insurance Co. of America, 192 N.J. 110 (2007), and Pukowsky v. Caruso, 312 N.J. Super. 171 (App. Div. 1998), both of which address the appropriate test to apply in determining whether an individual has the requisite status to bring a claim under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14.

In NJ-PLIGA, supra, we acknowledged that "use of the control test to determine whether one is an employee for purposes of social

legislation such as the Workers' Compensation Act is inapposite because '[the basic purpose for which the definition is used in compensation law is entirely different from the common-law purpose].'" 195 N.J. Super. at 9 (alteration in original) (emphasis omitted) (citation omitted). CEPA is also social legislation that advances its own unique purpose. D'Annunzio, supra, 192 N.J. at 119. That a different test may be applicable in determining whether a person is an employee under CEPA provides no reasonable basis for abandoning our holding in NJ-PLIGA that the control test applies and that foster parents are not employees of DYFS.

Plaintiffs also argue DYFS had a "non-delegable duty" that renders it liable for the negligence of foster parents. Other than as a vehicle for the imposition of liability, plaintiffs have not identified the scope of the "non-delegable duty" they assert existed here. In opposing DYFS's summary judgment motion, plaintiffs clarified that they did not allege DYFS was negligent in authorizing Harriet to care for medically fragile children, for failing to inspect the home properly or for failing to visit the home sufficiently frequently.[4] Clearly, DYFS must perform its

---

[4] Plaintiffs suggest that DYFS's failure to require resource parents to secure general liability insurance constitutes negligence. This argument was quite properly rejected by the trial court as unsustainable under the TCA.

duties responsibly but there is no authority or legal standard in New Jersey that requires it to be a guarantor that no harm will befall children it has placed in resource homes. Having identified no lapse in the performance of duties assigned to DYFS by statute or regulation, plaintiffs' argument that DYFS breached a non-delegable duty here lacks merit.

Affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION