**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1593-21

GLEN J. HEUMAN and
DONNA HEUMAN, husband
and wife,

     Plaintiffs-Appellants,

v.

WAYNE HEUMAN, WAYNE
HEUMAN MASONRY, DEEJON
BUILDERS LLC, and TODD
LOUIS MASTROCOLA, SR.,

     Defendants-Respondents.

_____

Argued November 14, 2023 – Decided December 11, 2023

Before Judges Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2951-19.

Bard L. Shober argued the cause for appellants (Cooper Levenson, PA, attorneys; Jennifer B. Barr and Bard L. Shober, on the briefs).

Linda A. Olsen argued the cause for respondents Wayne Heuman and Wayne Heuman Masonry (Ronan,

Tuzzio & Giannone, PC, attorneys; Linda A. Olsen, on the brief).

PER CURIAM

Plaintiffs Glen Heuman and his wife Donna Heuman appeal from a January 10, 2022 Law Division order that granted summary judgment to defendants Wayne Heuman[1] and Wayne Heuman Masonry (WHM) and dismissed plaintiffs' negligence-based complaint against WHM.[2] Before us, plaintiffs principally argue the court erred in concluding their claims were barred by the Workers' Compensation Act (WCA), N.J.S.A. 34:15-1 to -147, because defendants failed to obtain workers' compensation insurance coverage and consequently should not be afforded the protections under the WCA.

Plaintiffs also contend the court improperly granted defendants' application because the motion record contained genuine issues of material fact as to whether defendants knew their conduct was substantially certain to cause Glen's injuries, thus permitting a direct claim against WHM under Laidlow v.

---

[1]  As several parties to the matter share the same surname, we refer to them by their first names, intending no disrespect.

[2]  After a proof hearing, the court awarded plaintiffs a judgment against Deejon Builders, LLC, who did not enter an appearance, and granted Todd Louis Mastrocola's unopposed motion for summary judgment. Deejon and Mastrocola are not parties to this appeal.

Hariton Mach. Co., 170 N.J. 602 (2002).  After considering plaintiffs' arguments against the record and applicable legal principles, we reject them and affirm.

I.

We discern the following facts from the summary judgment record and consider them in a light most favorable to plaintiffs because they are the parties against whom summary judgment was entered.  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

In December 2017, Deejon, a general contracting company, entered into an agreement with property owner Mastrocola to build a new home.  Deejon retained WHM, which is owned and operated by Glen's cousin Wayne, as a contractor to perform masonry work.  Although Wayne primarily worked alone, at times he would hire Glen to assist with masonry jobs.  When Glen worked these sporadic jobs, he was compensated in cash and his employment was never formally recorded.

After securing the contract with Deejon, Wayne contacted Glen to assist with the construction and Glen worked onsite on February 13 and 14, 2018.  During those two days, Glen mixed mortar and grout for the foundation of the home using a mortar mixer, which Wayne modified due to a missing recoil spring.  To start the mixer in its altered state, the operator had to remove the

protective cover, wrap a pull cord with a handle around a pulley section of the machine and tug, similar to a lawnmower.

Glen used the mixer in this fashion without incident on February 13, 2018, and approximately fifteen to twenty times before lunch the following day. After lunch, however, when Glen attempted to start the mixer using the modified system, the pull cord became caught in the machine's rotating motor and its handle struck him in the eye.

Glen was immediately transported to a nearby hospital and treated for fractures in his right orbital lobe as well as the rupture of the globe of his right eye. He underwent two surgeries, ultimately resulting in the removal of the right eye and his permanent need for a prosthetic.

Due to his sustained injuries, Glen filed a workers' compensation petition, although it is unclear from the record when he filed the application or its disposition. In November 2019, plaintiffs filed their initial complaint against defendants, which they later amended in October 2020, sounding in negligence. In response, defendants argued plaintiffs' claims were barred by the WCA.

The parties engaged in discovery, including the depositions of Glen and Wayne. Glen testified he assisted Wayne at approximately five masonry jobs, and most of them involved mixing mortar. He affirmed he used Wayne's

4

modified mixer on those other occasions without incident. Glen also testified that Wayne never instructed him on how to use the modified machine, but conceded he was familiar with use of similar modified machines from his prior experience in masonry.

Further, Glen admitted he was not wearing safety glasses when he was operating the mixer, although he was aware that it would be proper protocol to do so. Glen also testified Wayne indicated to him that he possessed insurance, although Glen did not request proof of insurance, or inquire what specific insurance Wayne purchased.

At his deposition, Wayne testified he was unaware of the statutory requirement to obtain workers' compensation insurance at the time of the incident. Specifically, he explained he "mostly worked by [himself]" and therefore did not understand "the sense of [him] having workman's comp if [he was] only covering [himself]." When asked about his modification to the mixer, Wayne testified that wrapping the cord to start the machine in that manner was common practice in the industry, and further stated he had seen this solution for similarly broken machines during his thirty-year tenure in the business.

During the discovery period, the parties also provided their own expert reports regarding the incident. Defendants' expert, George H. Pfreunschuh, P.E.,

concluded Glen's injuries were not "attributable to an intentional act" by defendants. Specifically, Pfreunschuh explained that although the machine's missing recoil technically constituted an OSHA violation, Glen's and Wayne's deposition testimonies established there was a "long-standing industry practice" to operate mortar mixers in this fashion. He similarly concluded there was not a substantial certainty the modification of the mixer would cause Glen's injuries, again based on the industry practice and because Glen previously used the machine in this manner "so many, many times before" without incident.

Plaintiffs submitted an expert report by Brian E. Beatty, P.E. His evaluation, however, solely focused on "the impact of Glen . . . being struck in his eye with the . . . mortar mixer," and did not offer an opinion on whether defendants' actions constituted an intentional act, or whether there was a substantial certainty they would cause Glen's injuries. Specifically, Beatty opined, depending on the amount of torque generated by the mixer at the time of impact, the speed at which the handle struck Glen in the eye ranged from 13.7 mph to 114.5 mph.

In December 2021, defendants moved for summary judgment, arguing plaintiffs' claims were barred by the WCA because Glen was defendants' employee and defendants' modification of the machine did not qualify as an

6

intentional wrong. In opposition, plaintiffs contended their claims were not barred under the statute because Glen was considered a casual employee, and defendants failed to obtain the required workers' compensation insurance coverage. Further, plaintiffs argued summary judgment was inappropriate as there was at least a genuine issue of material fact as to whether defendants knew the alteration of the mortar mixer was substantially certain to result in Glen's injuries.

After considering the parties' submissions and oral arguments, the court granted defendants' motion for summary judgment, and dismissed plaintiffs' complaint with prejudice. It detailed its reasoning in a written opinion.

First, the court determined there was no genuine issue of material fact regarding Glen's status as defendants' employee, based on his own certification contained in his workers' compensation petition, his lack of other employment, and his frequent, though sporadic, work for defendants. The court further noted "the subject work was not accidental."

The court also determined that, under Laidlow, 170 N.J. at 623, there was no genuine factual dispute "that movant's actions by not having a cover on the mortar mixer were substantially certain to result in plaintiff's injuries," as "no reasonable jury could find these facts created substantial certainty that plaintiff

would be injured in the manner asserted."  In support, it noted the absence of prior OSHA violations against defendants involving the machine, Glen's concession that starting the mixer without a protective cover in the manner done on site "was fairly standard in the industry," and Glen's previous use of the modified mixer "many times" without injury.

With respect to defendants' failure to carry necessary workers' compensation insurance, the court determined this fact was not "dispositive to permit plaintiff to assert a third-party negligence claim," as it did not constitute an "exception to the workers' compensation bar."  It supported this conclusion by relying on the existence of the Uninsured Employers' Fund (the Fund), which "was intended to remedy this situation as to compensability" and also noted N.J.S.A. 34:15-120.1 and 120.9 allowed for injured workers to seek recovery against non-compliant employers for damages not covered by the Fund.

Although the court acknowledged the seriousness and permanence of plaintiff's injury, as well as the effect of defendants' failure to carry the required insurance, it reasoned that based on the "current status of the law," the court was "constrained" to grant defendants' motion for summary judgment.  This appeal followed.

II.

8

Plaintiffs initially argue because defendants failed to purchase workers' compensation insurance, the court erred in concluding their claims were barred under the WCA. As such, plaintiffs contend defendants should not be permitted to benefit from the WCA's trade-off, which ensures employee compensation for workplace injury while shielding employers from common-law negligence liability, due to defendants' "flagrant disregard" of the WCA's insurance requirement.

Plaintiffs claim the Fund inadequately compensates Glen because it does not afford recovery for a permanent disability. As an award for permanent injury would have been possible had defendants obtained workers' compensation insurance, plaintiffs argue defendants cannot be permitted to "now hide behind the . . . bar [of common-law suit] to avoid liability" in contravention of the WCA's intended purpose of protecting employees. Further, even assuming the parties are bound by the WCA, plaintiffs assert defendants' "breach of [their] duty to provide compensation [to Glen], prevents [defendants] from enjoying . . . immunity from common-law negligence."

Next, plaintiffs argue there is a genuine issue of material fact "as to whether [defendants] acted with knowledge that operating the rigged mortar mixer without a protective guard was substantially certain to result in [Glen]'s

9

injuries" and accordingly, summary judgment was improper under <u>Laidlow</u>, 170 N.J. at 623.

Finally, as best we can discern, plaintiffs argue they should be permitted to bring their negligence claims against defendants as they are further inhibited from receiving compensation from defendants' commercial general liability (CGL) policy. According to plaintiffs, because defendants "could [not] satisfy a judgment to remedy the total loss of one eye" allowing their negligence claims against defendants "is the only viable means of recovery for his serious, permanent injury." We disagree with all these arguments.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion court. <u>Townsend v. Pierre</u>, 221 N.J. 36, 59 (2015). Like the motion court, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." <u>Town of Kearny v. Brandt</u>, 214 N.J. 76, 91 (2013) (quoting <u>Brill</u>, 142 N.J. at 540); <u>see also</u> <u>R.</u> 4:46-2(c). If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts will "not hesitate to grant summary judgment." <u>Brill</u>, 142 N.J. at 540 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

10

The WCA provides an exclusive remedy for injuries sustained in an "accident arising out of and in the course of employment." N.J.S.A. 34:15-7. See also N.J.S.A. 34:15-8. "We have long recognized that [the WCA] is remedial legislation and should be given liberal construction in order that its beneficent purposes may be accomplished." Kocanowski v. Township of Bridgewater, 237 N.J. 3, 10 (2019) (alteration in original) (quoting Estate of Kotsovska v. Liebman, 221 N.J. 568, 584 (2015)).

"For more than a century, the [WCA] has provided employees injured in the workplace medical treatment and limited compensation 'without regard to the negligence of the employer.'" Vitale v. Schering-Plough Corp., 231 N.J. 234, 250 (2017) (quoting Estate of Kotsovska, 221 N.J. at 584). It has been described as a "historic 'trade-off,'" Laidlow, 170 N.J. at 605, where the employer "assumes an absolute liability[,] [but] gains immunity from common-law suit, even though he [may] be negligent, and is left with a limited and determined liability in all cases of work-connected injury," Vitale, 231 N.J. at 250 (first alteration in original).

The statute imposes a requirement on employers to properly compensate injured employees, and to carry workers' compensation insurance. N.J.S.A.

34:15-71 to -72; N.J.S.A. 34:15-79(a).  Despite these mandates, the statute also addresses scenarios, like the one involved here, in which an employer fails to purchase the mandated coverage or refuses to compensate its injured employees.

Specifically, N.J.S.A. 34:15-120.1(a) establishes the Fund "to provide for the payment of awards against uninsured defaulting employers who fail to provide compensation to employees or their beneficiaries in accordance with the provisions of the workers' compensation law," and is subrogated to the rights of the employee to the extent of any payment, N.J.S.A. 34:15-120.5.  The Fund allows for recovery of medical bills and temporary disability benefits but does not allow for recovery of permanent disability benefits.  See Macysyn v. Hensler, 329 N.J. Super. 476, 479 (App. Div. 2000); Bashir v. Comm'r, 313 N.J. Super. 1, 3 (App. Div. 1998); N.J.S.A. 34:15-120.2.

Even so, for costs which are deemed compensable under the WCA but are not recoverable by the Fund, the statute authorizes an employee to bring an action against their employer "to recover all or part of any damages and costs sustained by the employee," N.J.S.A. 34:15-120.9.  See also Macysyn, 329 N.J. Super. at 483; Sroczynski v. Milek, 396 N.J. Super. 248, 258 (App. Div. 2007).  In addition to this avenue of recovery, employers "who fail[] to provide the protection prescribed in [the WCA] . . . shall be guilty of a disorderly persons

offense and, if the failure, misrepresentation or provision of false, incomplete or misleading information is knowing, shall be guilty of a crime of the fourth degree." N.J.S.A. 34:15-79(a).

We initially disagree with plaintiffs' argument the issues presented are matters of first impression, or a situation not contemplated by the Legislature. The purpose of the WCA is to provide for an "exclusive remedy" for employees' injuries obtained in the course of their employment. N.J.S.A. 34:15-7; Kibler v. Roxbury Bd. of Educ., 392 N.J. Super. 45, 47 (App. Div. 2007). In its effort for the WCA to provide this singular avenue of recovery, the Legislature contemplated instances in which employers would either fail to provide coverage or refuse to compensate their employees in accordance with the statute. Indeed, this is apparent in the creation of the Fund, N.J.S.A. 34:15-120.1(a), as well as the ability to bring both civil and criminal suit against employers who fail to provide the statutorily mandated coverage, N.J.S.A. 34:15-120.9; N.J.S.A. 34:15-79(a).[3]

---

[3] We acknowledge, as recent commentators have explained, the practical difficulties employees often face when pursuing claims against the Fund or uninsured employers. Christopher J. Keating & Mark R. Natale, Uninsured Employers Should No Longer Receive the Benefits of the Exclusive Remedy Provision of the Workers' Compensation Act, 342 N.J. Lawyer 44, 46 (2023). We remain convinced, however, that any substantive changes to the WCA must originate from the Legislature.

## IV.

Second, relying principally on <u>Laidlow</u>, 170 N.J. at 602, plaintiffs argue the court erred in granting defendants' motion for summary judgment because the motion record demonstrated a genuine issue of material fact with respect to defendants' knowledge that their conduct was substantially certain to result in Glen's injuries and whether the circumstances here were beyond what the Legislature intended the WCA to immunize.

As to defendants' conduct, plaintiffs contend defendants' actions were "substantially certain to result in [Glen's] injuries" based on Beatty's expert report and Wayne's awareness that operation of the altered mixer required operation "without a protective guard," which constituted an OSHA violation. With respect to the context prong, plaintiffs argue defendants' refusal to replace broken machinery is "not the standard or appropriate" industrial practice and the use of a broken mixer, without its protective guard, is beyond what the Legislature sought to immunize under the WCA. Again, we disagree.

As noted, the WCA provides the exclusive remedy for injuries arising out of and in the course of employment, and bars common law tort claims for such injuries "except for intentional wrong." N.J.S.A. 34:15-8. To demonstrate an intentional wrong, the employee need not demonstrate "a subjective desire to

14

harm." Laidlow, 170 N.J. at 613. Rather, they must satisfy a two-prong test involving the employer's conduct and "the context in which that conduct takes place." Id. at 614 (quoting Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 179 (1985)). Courts have found an employer's intentional wrong "in only rare and extreme factual circumstances." See Kibler, 392 N.J. Super. at 52-53.

Under the conduct prong, the employee must "establish the employer knew that its actions were substantially certain to result in injury or death to the employee." Hocutt v. Minda Supply Co., 464 N.J. Super. 361, 375 (App. Div. 2020) (citing Millison, 101 N.J. at 178-79). Notably, recklessness and gross negligence are insufficient to meet this standard. Van Dunk v. Reckson Assocs. Realty Corp., 210 N.J. 449, 452 (2012). As the Court explained, "the dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory framework of the [WCA] is not circumvented simply because a known risk later blossoms into reality." Hocutt, 464 N.J. Super. at 375 (quoting Millison, 101 N.J. at 178).

In addition, to satisfy the context prong, the employee must demonstrate "the resulting injury and the circumstances of its infliction were more than a fact of life of industrial employment and plainly beyond anything the Legislature intended the WCA to immunize." Hocutt, 464 N.J. Super. at 375 (citing

15

<u>Millison</u>, 101 N.J. at 178-79).  This inquiry is purely a question of law for the court.  <u>Laidlow</u>, 170 N.J. at 623.  Therefore, "if the substantial certainty standard presents a jury question and if the court concludes that the employee's allegations, if proved, would meet the context prong, the employer's motion for summary judgment should be denied; if not, it should be granted."  <u>Ibid.</u>

The Court's consideration involves "the totality of the facts contained in the record."  <u>Laidlow</u>, 170 N.J. at 623-24.  Generally, "the same facts and circumstances" are relevant to both prongs of the test.  <u>Mull v. Zeta Consumer Prods.</u>, 176 N.J. 385, 390 (2003) (quoting <u>Laidlow</u>, 170 N.J. at 623).  Our Supreme Court in <u>Van Dunk</u> noted certain commonalities among cases in which it found an intentional wrong:  "<u>Millison</u>, <u>Laidlow</u>, <u>Crippen</u>[ v. Cent. Jersey Concrete Pipe Co.</u>, 176 N.J. 397 (2003)], and <u>Mull</u> . . . all involved the employer's affirmative action to remove a safety device from a machine, prior OSHA citations, deliberate deceit regarding the condition of the workplace [or] machine . . . knowledge of prior injury or accidents, and previous complaints from employees."  <u>Van Dunk</u>, 210 N.J. at 471.

The Court also stressed it is not a "per se rule that an employer's conduct equates with an 'intentional wrong' within the meaning of [the WCA] whenever that employer removes a guard or similar safety device from equipment or

machinery, or commits some other OSHA violation." Laidlow, 170 N.J. at 622-23. Conversely, "the absence of a prior accident does not preclude a finding of an intentional wrong." Crippen v. Cent. Jersey Concrete Pipe Co., 176 N.J. 397, 399 (2003) (quoting Laidlow, 170 N.J. at 621). As we noted in Bove v. AkPharma Inc., 460 N.J. Super. 123, 142-43 (App. Div. 2019), "in addition to violations of safety regulations or failure to follow good safety practice, an intentional wrong will be found when it is accompanied by something more, such as deception, affirmative acts that defeat safety devices, or a willful failure to remedy past violations."

For example, in Laidlow, the Court found an intentional wrong when an employee was seriously injured by a rolling mill from which the employer had removed the safety mechanism, replacing it only during OSHA inspections. 170 N.J. at 608, 622-23. The Court noted the employer had ignored employee requests to replace the safety guard following two incidents where employees' hands had almost been pulled into the machine. Id. at 608. The Court concluded a jury question existed on the employer's knowledge of a substantial certainty of injury, based on "the prior close-calls, the seriousness of any potential injury that could occur, [the employee]'s complaints about the absent guard, and . . . [the employer's] deliberate and systematic deception of OSHA." Id. at 622.

The Court also found an employee's injury resulting from the deliberate removal of a safety device "to enhance profit or production, with substantial certainty that it will result in death or injury to a worker," paired with the employer's "deliberately and systematically deceiv[ing] OSHA into believing that the machine is guarded" could not be considered "to constitute simple facts of industrial life." Ibid. It concluded it was "confident that the Legislature would never expect [such conduct] to fall within the [WCA] bar." Ibid.

Here, the motion record does not reflect defendants' actions satisfy the high bar to apply the intentional wrong exception. First, the evidence does not establish defendants knew use of the modified mixer was substantially certain to result in injury, as required under the conduct prong. We acknowledge defendants were aware their modification to the mixer necessarily meant the machine was broken to some degree. However, unlike in Laidlow or the other cases noted, defendants had not received any formal OSHA citation about the machine, nor any previous complaints from employees, including Glen. Indeed, Glen did not protest use of the modified mixer or request it be repaired at any point, and he testified to using it multiple times in the past and fifteen to twenty times on the day of the incident. No evidence in the record demonstrated any prior injuries or "close calls" resulting from use of the mixer, or even similarly

18

modified mixers.  Finally, defendants did not attempt to conceal the machine's alteration from Glen or regulatory authorities.

Plaintiffs also fail to overcome the "high threshold" of the context prong, Van Dunk, 210 N.J. at 474, as there is no evidence in the record that defendants' actions are not "a simple fact of industrial life or are outside the purview of the conditions that the Legislature could have intended to immunize under the Workers' Compensation bar." Laidlow, 170 N.J. at 623.  The testimony of both Glen and Wayne, as well as the unrebutted opinions in Pfreunschuh's report, reflected this modification of a mortar mixer was common practice among the industry.  Unlike in Laidlow, defendants did not engage in any deception about any danger involved in using the mixer.  Further, Glen's injury, which occurred on the job and directly arose out of his employment by defendants falls precisely within the Legislature's intended bar of negligence claims against employers. N.J.S.A. 34:15-7.  At bottom, plaintiffs fail to establish defendants' conduct qualified as an intentional wrong under the statute or the case law.

We also reject plaintiffs' arguments regarding the effect of the apparent lack of coverage for Glen's injuries in defendants' CGL policy.  As discussed, the WCA does not limit recovery to only those funds available from the Fund and permits recovery against employers who violate the statutory requirement.

N.J.S.A. 34:15-120.9; N.J.S.A. 34:15-79(a). We are unconvinced the ostensible lack of coverage under defendants' CGL policy warrants an exception the WCA as established by the Legislature.

Finally, we in no way minimize the severity of Glen's injury or the permanency of its effect on his life going forward. Nevertheless, we remain convinced that to allow plaintiffs' claims to proceed would be in direct contravention of the WCA.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1593-21